**William SHEETS, Director, Tennessee Bureau of Criminal Identification, et al., Plaintiffs-in-Error,**

v.

**J. Fred HATHCOCK, Individually, and d/b/a Hathcock Realty Company, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

April 9, 1975.

Certiorari Denied by Supreme Court Sept. 2, 1975.

R. A. Ashley, Jr., Atty. Gen., Alex B. Shipley, Jr., Asst. Atty. Gen., Carl Douglas Thoreson, Asst. Dist. Atty., Nashville, for plaintiffs-in-error.

Joe P. Binkley, Nashville, for defendants-in-error.

## OPINION

GALBREATH, Judge.

This is an appeal from the action of the Criminal Court of Davidson County in granting the motion of J. Fred Hathcock to quash a subpoena issued by William Sheets, Director of the Tennessee Bureau of Investigation to the First American National Bank in Nashville.

From the record it appears that in June of 1974 an ongoing investigation was being conducted by the Office of the District Attorney General in Davidson County into allegations of official misconduct on the part of some members of the Metropolitan Council. In response to a request from the District Attorney, the Tennessee Bureau of Investigation undertook to assist in the investigation. The subject subpoena was issued at the behest of one Charles Young, Investigator, pursuant to authority granted by T.C.A., § 38–502:

> When detailed by the commissioner to aid the district attorney-general as aforesaid, such field investigators shall have full power to issue subpoenas for witnesses, serve the same, to administer oath to such witnesses as they may summon, to take written statements from them . .

The subpoena was not made an exhibit to the record for some reason but, as read into the Bill of Exceptions by counsel for Mr. Hathcock, recited:

> We command you to summon any authorized representative of the First American National Bank, Davidson County, Tennessee personally to appear before the undersigned to be questioned by him and/or to bring with him such paper, book, agreement, document or other records pertaining to any accounts in the name of Hathcock Realty Company and/or J. Fred Hathcock from the period of a certain date at 10:00 a. m. on the 25th day of June, 1974 at 1210 Andrew Jackson Building in the City of Nashville. Signed Mr. Charles Young, C.I.

It was part of the contention of Hathcock that records compiled relative to his business transactions with the bank were not subject to subpoena since he had not been

charged with any crime and was under no indictment.

Most subpoenas inquiring into possible criminal activities of persons under investigation by the Attorney General for the eventual use of the Grand Jury are issued well before indictment. This is so general a practice that no citation to authority is necessary in support. The fact that the subpoena in this case was issued not by a court or Grand Jury is not decisive.

Statutes authorizing administrative subpoenas are numerous. See T.C.A., Vol. 15, General Index, pages 366, 367 and 368. Such subpoenas authorized by the Legislature in the absence of any charge have been upheld by the Supreme Court.

In *Rushing v. Tennessee Crime Commission*, 173 Tenn. 308, 117 S.W.2d 4, an attack on administrative subpoenas was made prior to any indictment during a general investigation into crime. The Court held:

> The provisions of such statutes authorizing public instrumentalities such as boards and commissions to issue subpoenas for witnesses and require them to produce pertinent documentary evidence in their possession are not proscribed by any provision[s] of the Constitution nor by any consideration of public policy. Such powers are conferred upon the Fire Prevention Department, upon the State Board of Public Utilities, and upon municipal boards through provisions in corporate charters.

It also states on page 319, 117 S.W.2d on page 9:

> It is insisted that the provision of section 6 requiring all departments and officers of the State and its subdivisions to give information to the Crime Commission in aid of its inquiry is void, among other reasons because it violates the assurance against unlawful search and seizure, lets the Commission inquire into the private affairs of the citizens, and for other reasons. Counsel have pointed out no provision of the Constitution to support complainants' insistence and we know of no constitutional restraint upon the power of the State to inquire into the conduct of State, county and municipal officials in their management of public affairs and to examine the public records in their possession.

It is true that in this case the records are not "public records," but neither are they records of J. Fred Hathcock but those of the bank kept by it for its business purposes. This brings the question that to us is decisive—standing of Mr. Hathcock to challenge the issuance of the subpoena. The subpoena in question was not directed to Hathcock but to the First American National Bank. If anyone could challenge its sufficiency the Bank would have to. The records asked for in the subpoena were not the records of Hathcock, but those of the Bank kept for its own business purposes.

There appear to be no Tennessee cases on the subject. Many Federal cases, particularly in the line of IRS subpoenas directed to various and sundry people concerning the records of another, may be found. In them, subpoenas similar to the one in this case were challenged by the persons who were the subject of the records on the basis of Fourth and Fifth Amendment rights claimed—both under the self-incrimination and search and seizure doctrines. In one such case dealing with an IRS subpoena from the Sixth Circuit (*In re Fahey,* 300 F.2d 383 (1961), the issue was work papers made by an accountant hired by Fahey to prepare tax returns. The Court said at page 385:

> There is no constitutional privilege for incriminating evidence in the possession of another person, even though the information supporting the evidence was obtained from the accused and regardless of whether such evidence tends to incriminate the other person.

One may, with some degree of confidence, disclose incriminating facts to his spouse, accountant, attorney, physician, or priest, but no statutory or ethical relation-

ship inhibits any other person from divulging such information whether he be neighbor, stockbroker, barkeep or banker. Indeed there is a common duty shared by all not under the inhibition of a privileged status to come forward with any information they might have imparted to them that indicates the confidant has violated the law. While not all respond voluntarily to this measure of good citizenship by informing those in authority of the information confided in them by one engaged in criminal activity, it is presumed that all will obey the lawful mandate of a subpoena and speak the truth when official inquiry is made.

One who wishes his affairs to remain secret should not impart information concerning them to a friend, a banker, or even a tape recorder in the Oval Office of the President of the United States. Once having been voluntarily made, admissions against interest to a non-privileged party may be used against the declarant whether the admissions take the form of an oral or written confession, a letter to a relative, a recorded conversation, a deposit slip given to a teller at a bank, or any of the literally hundreds of forms communications take. While the Fifth Amendment to the United States Constitution protects one against compulsory furnishing of evidence against oneself, it does not extend to non-privileged communications to third parties.

In perhaps the most recent case of asserted privilege (here in partnership records subpoenaed by a Grand Jury for investigation of the personal affairs of the partner in custody of the records), *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678, the Court held:

These decisions reflect the Court's consistent view that the privilege against compulsory self-incrimination should be "limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records." *United States v. White,* supra, 322 U.S.

[694], at 701, 64 S.Ct. [1248], at 1252 [88 L.Ed. 1542]. White is only one of the many cases to emphasize that the Fifth Amendment privilege is a purely personal one, most recent among them being the Court's decision last Term in *Couch v. United States,* 409 U.S. 322, 327–328, 93 S.Ct. 611, 615–616, 34 L.Ed.2d 548 (1973). Relying on this fundamental policy limiting the scope of the privilege, the Court in White held that "the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity." 322 U.S. at 699, 64 S.Ct. at 1251.

In *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed. 548, the Supreme Court held:

It is important to reiterate that the Fifth Amendment privilege is a *personal* privilege: it adheres basically to the person, not to information which may incriminate him. As Mr. Justice Holmes put it: "A party is privileged from producing the evidence, but not from its production." *Johnson v. United States,* 228 U.S. 457, 458, 33 S.Ct. 572, 57 L.Ed. 919 (1913). The Constitution explicitly prohibits compelling an accused to bear witness "against himself": it necessarily did not proscribe incriminating statements elicited from another. Compulsion upon the person asserting it is an important element of the privilege, and "prohibition of compelling a man . . . to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communication from *him*," *Holt v. United States,* 218 U.S. 245, 252–253, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910) (emphasis added). It is extortion of information from the accused himself that offends our sense of justice.

In the case before us the ingredient of personal compulsion against an accused is lacking. The summons and the order of the District Court enforcing it are directed against the accountant. He, not the taxpayer, is the only one compelled to

do anything. And the accountant makes no claim that he may tend to be incriminated by the production. Inquisitorial pressure or coercion against a potentially accused person, compelling her, against her will, to utter self-condemning words or produce incriminating documents is absent. In the present case, no "shadow of testimonial compulsion upon or enforced communication by the accused" is involved. *Schmerber v. California,* 384 U.S. 757, 765, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966).

The divulgence of potentially incriminating evidence against petitioner is naturally unwelcomed. But petitioner's distress would be no less if the divulgence came not from her accountant but from some other third party with whom she was connected and who possessed substantially equivalent knowledge of her business affairs. The basic complaint of petitioner stems from the fact of divulgence of the possibly incriminating information, not from the manner in which or the person from whom it was extracted. Yet such divulgence, where it [did] not [coerce the accused] herself, is a necessary part of the process of law enforcement and tax investigation.

█ It results that we find that Hathcock is without standing to assert a sustainable claim of privilege preventing access to records of the First American National Bank.

Actually, most of what we have said here is not dispositive of the issue before us. It is sufficient merely to point out that the defendant in error, not being a party to the subpoena had no standing to object to its issuance or to such compliance as the First American National Bank might make pursuant to its directives. Although we do not suggest any basis therefor, any objections to compliance must be asserted by the Bank.

The judgment of the trial court is reversed and the motion of the petitioner below is dismissed at his costs.

Having disposed of the specifics of the case before us, we feel the following general comments are justified.

It is the ever present duty of judges to make such recommendations to the Legislative Branch as deemed necessary and appropriate:

> *Legislative advice.*—A judge has exceptional opportunity to observe the operation of statutes, especially those relating to practice, and to ascertain whether they tend to impede the just disposition of controversies; and he may well contribute to the public interest by advising those having authority to remedy defects of procedure, of the result of his observation and experience. Judicial Canons, § 19.

Having disposed of the issues presented by the facts of this case by applying the law as it now exists, we recommend that serious consideration be given to a modification of that law which now permits agents of the Tennessee Bureau of Investigation to do that which the law does not authorize any other law enforcement agency to do. District Attorneys General in Tennessee do not have the power to issue subpoenas requiring the production of evidence to him or members of his staff. Not even agents of the Federal Bureau of Investigation have this power. When we pointed out recently in *Graves v. State,* Tenn.Cr.App., 489 S.W.2d 74, the proscriptions against individuals being clothed with subpoena power, we reiterated the settled law in this State prohibiting District Attorneys General from issuing subpoenas and, in doing so, referred to an early decision of our Supreme Court:

> "[B]y what authority does an attorney-general assume to perform the functions and exclusive duties of the grand jury? The mere fact that he is an officer of the court and may visit the grand jury, prepare and present indictments to them, and prepare instruments when directed by the grand jury, does not imply an authority to assume any of the duties

assigned by law to a grand juror. If he may assume the office of grand juror for one purpose, why may he not do so for every purpose? If because he suspects a violation of law, he may of himself and of his own motion order a subpoena for witnesses to go before the grand jury to give evidence touching the same, why may not the sheriff or constable who waits upon the grand jury do so? Why may not the judge himself or any attorney for the court assume and practice the power?

"It requires a judge, attorney-general, attorneys, clerks, sheriffs, etc., to constitute a court, and each is an officer of the court, so if we construe the law directed to grand juries to include one officer of the court, we must for the same reason construe it to embrace all officers of that court.

\* \* \* \* \* \*

"That the Legislature did not intend to confer upon attorneys-general the power to order process of subpoena, in the sort of case before us, is manifest from section 5090a [40–1619], by which he is empowered to call upon clerks between terms for process to secure the attendance of witnesses before the grand jury at the succeeding term when, in his opinion, it is necessary to secure the ends of justice and protect the interests of the State." *Warner v. State,* 81 Tenn. 52.

By resorting to the broad powers conferred by T.C.A., § 38–502 on agents of the Tennessee Bureau of Investigation, District Attorneys General may actually do that which the law proscribes since the agent conducting the examination under the auspices of the authorized subpoena will be acting at the request of and, it is assumed, in direct association with the District Attorney General who requested the assistance. This is a subterfuge which has little appeal to logic. If the law cannot trust the chief elected official in a judicial district with the power to command citizens to appear before him in the course of a criminal investigation, one wonders why an individual officer

of an investigative agency should be so empowered.

It has always been repugnant to our form of government to permit policemen to have the power of compulsory process. As noted above, not even the most powerful such Federal investigating agency has this power.

We would recommend that the power of subpoena for the investigation of one suspected of criminality be conferred, if it is to exist, directly on District Attorneys General, rather than on field agents of the Tennessee Bureau of Investigation and that the provisions of Tennessee Code Annotated now granting this power to the latter be repealed.

O'BRIEN and DUNCAN, JJ., concur.