**STATE of Tennessee, Petitioner,**

v.

**William GOAD, Jr., Respondent.**

Supreme Court of Tennessee.

April 18, 1977.

---

William W. Hunt, III, Asst. Atty. Gen., Brooks McLemore, Atty. Gen., Nashville, for petitioner.

Thomas W. Hardin, Columbia, for respondent.

## OPINION

COOPER, Chief Justice.

Respondent William Goad, Jr., was convicted in the Criminal Court of Maury County, and was sentenced to serve five years in the penitentiary. The Court of Criminal Appeals reversed and remanded, holding that the arrest of respondent was illegal and that the trial judge had committed reversible error in failing to suppress evidence "flowing from the unlawful arrest."

This court granted a petition for certiorari filed on behalf of the State to consider the issue on which reversal had been ordered.

On May 16, 1975, at about 10:00 a. m., Mrs. Harry Napier, a co-owner of the Maury Package Store in Columbia, Tennessee, was robbed by a lone man wielding a knife. Mrs. Napier described the robber as a white male, in his middle twenties, with long blond hair and a "bony-like" face, and wearing a blue denim jacket. Shortly after the robbery, police twice stopped a blue, 2-door, Pontiac LeMans automobile in which the respondent was riding. The second stop resulted in the arrest of respondent and his three companions.

The first stop occurred in nearby Mt. Pleasant, Tennessee. The four men in the automobile were seen coming out of a tavern and one of them was noticeably staggering as he walked. The police chief of Mt. Pleasant directed one of his patrolmen, George Bullock, to stop the automobile to see if the occupants were drunk. The officers found that one of the four occupants, not the respondent, was intoxicated but no arrest was made.

At the time he stopped the automobile, Bullock knew of the Columbia liquor store robbery and had a description of the robber. However, during the detention of the respondent and his companions, he made no connection between the robbery and the four men. Bullock also testified he did not see a blue denim jacket in the automobile.

The second stop of the automobile, and the stop that resulted in the evidence the Court of Criminal Appeals held to be inadmissible, was made by Columbia Detective Albert Lentz. Lentz was on patrol when he received a radio communication from the Mt. Pleasant police saying they had stopped an automobile in which four men were riding as passengers, and that William Goad, Jr., was one of them. Lentz testified he knew Goad's description matched that of the robber given by the victim and decided to have the car stopped again because "I thought it would be worthwhile to check him out."

Lentz then drove out Mt. Pleasant Pike until he met the blue Pontiac in which Goad was riding. Lentz followed the automobile as it circled from the Pike through the Graymere Subdivision and back toward the Pike, and radioed for help in stopping the automobile. Two other radio cars and Lentz intercepted the Pontiac as it entered the Pike.

On stopping the automobile, Lentz walked to the passenger's side where respondent was sitting. According to Lentz, he could plainly see "some bills, some money" sticking out from under the seat occupied by respondent, and a blue denim jacket lying on the console between the two front seats. Each passenger, in turn, denied ownership of the money. At that time, Lentz informed the four men that "they were under arrest in investigation of the rob-

bery." Money taken from the four men, together with that on the floor of the automobile, totalled $279.00; $313.00 was taken in the robbery. Further, one of the men was wearing a belt holster containing a knife of the same description as the one used in the robbery.

As stated previously, the Court of Criminal Appeals concluded that the second stop of the automobile amounted to a warrantless arrest for which no probable cause existed and, consequently, evidence seized as the result of the arrest was inadmissible in evidence. In so holding, the court reasoned that the description of the robber "would probably fit hundreds, perhaps thousands of people in the area. Such police dragnets, albeit successful in some instances such as the one dealt with here, are prohibited by the United States Constitution as interpreted by the United States Supreme Court," citing *Davis v. Mississippi*, 394 U.S. 721, 726–727, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

We find nothing in the record to indicate that the stopping of the Pontiac automobile was the result of a "police dragnet." To the contrary, the evidence shows that the stopping of the automobile was due to the knowledge of Detective Lentz that Goad was in the automobile and that he fit the description of the robber, which description was much more detailed than that of the rapist in *Davis*.

Also, we find ourselves in disagreement with the conclusion of the Court of Criminal Appeals that the second stopping of the automobile amounted to a warrantless arrest. As we view the evidence, the officers did not stop the automobile to make an arrest, but did so as part of a routine police investigation. The arrest took place after the automobile was stopped and the officer, standing where he had the right to be, saw incriminating evidence in the automobile. This evidence, coupled with the fact that Goad fit the description of the robber, constituted probable cause and justified the arrest of respondent. *See State v. McLennan*, 503 S.W.2d 909 (Tenn.1973), cert. den. 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739;

*Wilson v. Porter*, 361 F.2d 412, 15 (9th Cir. 1966).

In the *Porter* case, *supra*, the court held that a *founded suspicion* is all that is necessary to justify the brief detention of a person in the course of a routine investigation—"some basis from which the court can determine that the detention was not arbitrary or harassing."

"We take it as settled that there is nothing ipso facto unconstitutional in the brief detention of citizens under circumstances not justifying an arrest for purposes of limited inquiry in the course of routine police investigations. . . . A line between reasonable detention for routine investigation and detention which could be characterized as capricious and arbitrary cannot neatly be drawn. But due regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their actions. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." *Wilson v. Porter, supra* at 415.

The *Porter* holding, or rule if you may, was the basis for this court's decision in *State v. McLennan, supra*. In *McLennan*, police officers on the early morning shift saw an automobile coming out of a closed service station, which was located in a high-crime area. The car had Tennessee National Guard plates which did not show the county where the automobile was registered. The officers stopped the automobile "for identification purposes." When the occupants emerged from the car, a bag of burglary tools and a pair of "walkie-talkies" were revealed. The occupants of the automobile were then arrested. This court concluded that the officers had a substantial reason to be suspicious and that the stopping of defendant's automobile to ascertain "the identity of the occupants and where they resided" was justified. It was

also pointed out that the defendant was not arrested until after the officers saw "the criminal evidence" which was in "plain view."

In this case, a crime had been committed. A specific description of the robber had been given to police. Detective Lentz had been informed that William Goad, Jr., who fit the description of the robber, was in a blue Pontiac automobile moving on Mt. Pleasant Pike toward Columbia. We think this is sufficient information to justify the officers stopping the Pontiac automobile as part of the police investigation of the robbery.

> "The process of inquiry may involve some restraint on the individual liberty of some people of whom police make inquiries without arrest. It would be absurd to suggest that police must arrest a person before they can ask him questions." *Goldsmith v. United States*, 107 U.S.App. D.C. 305, 277 F.2d 335 (1960).

And, as this court pointed out in *Sneed v. State*, 221 Tenn. 6, 423 S.W.2d 857 (1968),

> "Constitutional rights are not violated when a law officer, without any trespass against [the] defendant, and while he is at a place where he [had] a right to be, looks and sees evidence against a defendant which is plainly visible."

The judgment of the Court of Criminal Appeals is reversed and the judgment of the trial court is affirmed.

FONES, HENRY, BROCK and HARBISON, JJ., concur.