Richard HOUSTON, Appellant,

v.

STATE of Tennessee, Appellee.

Supreme Court of Tennessee.

Jan. 7, 1980.

Roger D. Moore, Knoxville, for appellant.

William M. Leech, Jr., Atty. Gen. & Reporter, Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, for appellee.

## OPINION

COOPER, Justice.

This case is before us on appeal by Richard Houston from a judgment entered in the Criminal Court of Knox County, Tennessee. See T.C.A. § 39–2406. Specifically, the judgment approved the jury's verdicts (1) finding appellant guilty of robbery by use of a deadly weapon and fixing his punishment at life imprisonment in the state penitentiary, and (2) finding appellant guilty of murder in the first degree and fixing his punishment at death by electrocution. The victim of both crimes was Farris Stanley Balsinger, operator of Stan's Gulf Station in Knoxville, Tennessee. For reasons hereinafter stated, the judgment of the trial court is affirmed.

Stanley Balsinger's body was found at about 7:15 p. m. on April 21, 1978, in the restroom of the service station he operated. The customer of the station who found the body, Kenneth Hill, gave the police a detailed description of a man he saw leaving the vicinity of the men's restroom moments before the body was discovered, and of the automobile in which the man left the scene. The description was that of a black male, approximately six feet tall, 165 to 170 pounds, with a short afro, wearing a brown leather coat, and driving a white '64 or '65 Ford Fairlane with square tail lights and chrome missing from the passenger's side.

Detectives called to the scene to investigate the crime determined that Mr. Balsinger had been shot three times, once in the mouth, once in the heart, and once in the upper abdomen. The latter two wounds were powder marked and slugs were found on the tile floor under Mr. Balsinger's body

near the exit wounds, indicating that Mr. Balsinger was lying on his back on the floor of the restroom when two shots were fired into him at close range. Mr. Balsinger's wallet and receipts of the business were missing.

Approximately three hours later, two detectives of the Knoxville Police Department saw an automobile fitting the description of the get-away automobile as given by Mr. Hill. After a brief chase, but at speeds of up to seventy miles an hour, the automobile was stopped. There were two occupants— appellant, who fit the description of the suspect seen leaving the service station area except for the fact he was not wearing a leather jacket, and a female companion. On learning appellant's identity and knowing that he had been a suspect in an earlier robbery, the detectives called for the officers assigned to the Balsinger investigation. A search of the automobile at the scene turned up Mr. Balsinger's wallet and credit card receipts from the service station. A gun, later shown by laboratory tests to have been the gun used to kill Mr. Balsinger was also found.

While the search of the automobile was being made, appellant was seen trying to surreptitiously pass a "roll" of money to his companion. The officers took possession of the money, discovered that several bills were stained with blood, and formally placed appellant under arrest.

A subsequent search of a motel room rented to appellant and his companion turned up a leather jacket, such as the one worn by the person seen leaving the scene of the robbery and murder. The officers also found trousers and other clothing belonging to appellant that had been laundered, and were still wet. Appellant's companion stated that appellant had laundered his clothing to remove blood stains.

Thereafter, appellant gave a statement to the investigating officers in which he stated the robbery was a spur-of-the moment action, that Mr. Balsinger grabbed the gun, that he (appellant) sought to break away and escape, and that the gun went off accidentally in the struggle. Appellant ad-

mitted taking a billfold from Mr. Balsinger's pocket after the shooting.

Appellant insists the trial court committed prejudicial error in failing to suppress evidence found by the officers in the search of the automobile and that taken from appellant at the time of his arrest. Specifically, appellant insists his automobile was stopped without probable cause, and that the subsequent search, being without benefit of a search warrant was illegal. We see no merit in either insistence under the evidence in this case.

In *Wilson v. Porter*, 361 F.2d 412, 415 (9th Cir. 1966), the Court held that a founded suspicion is all that is necessary to justify the brief detention of a person in the course of a police investigation—"some basis from which the court can determine that the detention was not arbitrary or harassing."

We take it as settled that there is nothing ipso facto unconstitutional in the brief detention of citizens under circumstances not justifying an arrest for purposes of limited inquiry in the course of routine police investigations. . . . A line between reasonable detention for routine investigation and detention which could be characterized as capricious and arbitrary cannot neatly be drawn. But due regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their actions. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. *Wilson v. Porter, supra* at 415.

■ In this case, a crime had been committed. The officers who stopped appellant's automobile had been given a specific description of the person suspected of robbing and killing Balsinger, and also had been given a detailed description of the automobile in which the suspect left the crime scene. Appellant's automobile fit that description. He also attempted to

elude the officers by driving at an excessive rate of speed. We think the information possessed by the officers, coupled with the manner of driving of appellant, was sufficient to justify the officers stopping appellant's automobile as part of the ongoing police investigation of the robbery and death of Stanley Balsinger.

■ Appellant was not arrested until after the automobile was stopped and incriminating evidence found in the automobile and on appellant's person. This evidence, coupled with the fact that appellant fit the detailed description of the person seen leaving the service station after the killing, constituted probable cause and justified the arrest of appellant. *See State v. Goad*, 549 S.W.2d 377 (Tenn.1977); *State v. McLennan*, 503 S.W.2d 909 (Tenn.1973), *cert. denied*, 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973); *Wilson v. Porter, supra*.

Appellant insists that even if the stop of his automobile were legal, the subsequent search of the automobile, being without benefit of a warrant, was invalid.

■ A search of an automobile conducted without the authority of a warrant issued by a magistrate upon probable cause is, presumptively, an unreasonable one. *State v. Hughes*, 544 S.W.2d 99 (Tenn.1976). But there are well recognized exceptions to this rule. An officer of the law may search an automobile without a warrant if the owner of the automobile voluntarily gives consent. He also can search without a warrant if, at the time, he has probable cause to believe the automobile contains evidence of a crime and if the circumstances existing are such that the vehicle will probably escape before the search warrant can be obtained. *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ On hearing evidence at the suppression hearing in this case, the trial judge found both that appellant had voluntarily given his consent to a search of his automobile at the scene before his arrest, and that there were exigent circumstances present

which would have justified the search, even if appellant's consent had not been forthcoming. In our opinion the evidence supports the trial judge's findings on both issues.

In summary, the evidence shows that on stopping appellant's automobile, the officers informed him that he fit the description of a suspect in a shooting and that his automobile fit the description of the automobile used by the suspect in leaving the scene of the crime. The officers then asked for permission to search the automobile. In response, the appellant asked the passenger in his automobile for the keys. She gave them to him. He, in turn, gave the keys to the officers so that they could make a search. This action on the part of the appellant constituted voluntary consent, in our opinion.

Further, in the *Carroll* case, *supra*, the Court held that a warrantless search of an automobile stopped on a highway is valid, even without consent of the owner of the automobile, where (1) the officer has reasonable or probable cause to believe the automobile contains items subject to seizure, and (2) the automobile must be movable in the sense that the officer reasonably believes that it may be moved out of the jurisdiction by someone free to do so, and thus the car's contents may never be found again if a warrant must be obtained. *Chambers v. Maroney*, 399 U.S. 42, 47–52, 90 S.Ct. 1975, 1979–1981, 26 L.Ed.2d 419 (1970); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *State v. Parker*, 525 S.W.2d 128 (Tenn. 1975).

In this case, as heretofore noted, the officers that stopped appellant's automobile had probable cause to believe that appellant had left the scene of a crime in the automobile; and, accordingly, had reason to believe the automobile contained evidence that would be of material assistance in the prosecution of appellant. Further, there was a passenger in the automobile. There was no direct evidence of complicity of the passenger in the crime which would then justify the police taking the passenger into custody. Finally, the automobile was in such condition, it could be moved quickly out of the jurisdiction. These circumstances in our opinion, met the requirements set forth in *Carroll, supra*, for a warrantless search of an automobile, and would have justified the action of the officers in searching appellant's automobile, if appellant had not voluntarily consented to the search.

Preliminary to trial, appellant also sought to suppress the statement which implicated him in the robbery and murder of Stanley Balsinger. Appellant contends the trial judge should have found his testimony to be credible and that his statement was given involuntarily.

Appellant testified he was coerced into signing a rights waiver and a blank piece of paper, and that the officers later added the statement attributed to appellant. This testimony was contradicted by the officers who witnessed the waiver of rights and the giving of the statement. Both Officers Brock and Crawley testified the defendant voluntarily signed the waiver of rights. Both officers testified that no threats, promises or mental or physical coercion was used to get appellant to make the statement, which was the subject of the suppression hearing, and that the statement was signed by appellant after it was reduced to writing.

The issue of credibility of witnesses is primarily that of the trier of fact, in this instance the trial judge, since he has the opportunity to hear the witnesses and to observe them as they undergo examination. See *State v. Cabbage*, 571 S.W.2d 832 (Tenn.1978); *Bolin v. State*, 219 Tenn. 4, 405 S.W.2d 768 (1966). We see no basis in the record which would justify this court holding differently than the trial judge on the issue of credibility. Once the issue of credibility is resolved, there is no credible evidence in the record that the statement given by appellant to the investigating police officers and the waiver of rights afforded appellant under the *Miranda* doctrine were other than voluntary.

Appellant also questions the validity of the "bind-over order" of the General Sessions Court for Knox County, Tennessee. Appellant insists that the testimony upon which appellant was bound over to the grand jury was in fact predicated upon hearsay and, consequently, was invalid. This court has held that "except for documentary proof of ownership and written reports of expert witnesses, probable cause to bind over a defendant to the Grand Jury must be based upon legally competent evidence which would be admissible at trial." *Waugh v. State*, 564 S.W.2d 654, 659 (Tenn. 1978). We went on to point out, however, that "[a]dmission of incompetent evidence [in the preliminary hearing] . . . will not invalidate a bind-over order if the magistrate also had before him competent evidence sufficient in itself to establish probable cause." Here there was sufficient evidence aside from that which is being attacked as hearsay. The magistrate had before him the statement in which appellant admitted the robbery and shooting of Stanley Balsinger, and also the physical evidence taken from appellant and that found in his automobile.

Appellant has assigned as error the action of the trial judge in denying appellant's motions for a continuance. Appellant, through defense counsel, moved for a continuance on two separate occasions. The first motion was predicated on the ground that counsel had not had sufficient time to prepare for trial. The second was predicated on the ground that appellant either had or was in the process of employing other counsel. The trial judge, pointing out that counsel had had five and one-half months in which to prepare appellant's defense and that the proposed new counsel was deceased at the time the motion for continuance was filed, overruled the motions. We see no abuse of discretion in the trial judge's rulings, nor do we find any evidence in the record that appellant was prejudiced by being required to proceed to trial.

Appellant also questions the actions of the trial judge in allowing the state to question prospective jurors concerning their attitudes toward the death penalty, and in excusing for cause, a juror who stated he could not consider the imposition of the death penalty. Appellant insists that the concomitant result of these actions was to deny him a trial by "an impartial jury." We see no merit in this argument.

"The 'impartial jury' guaranteed by constitutional provisions is one which is of impartial frame of mind at the beginning of trial, is influenced only by legal and competent evidence produced during trial, and bases its verdict upon evidence connecting defendant with the commission of the crime charged, . . . ." 20 Words and Phrases, Perm. Ed., page 191 as quoted in *Durham v. State*, 182 Tenn. 577, 188 S.W.2d 555 (1945).

Impartiality requires not only freedom from jury bias against the accused and for the prosecution, but freedom from jury bias for the accused and against the prosecution. *Hayes v. Missouri*, 120 U.S. 68, 70–71, 7 S.Ct. 350, 30 L.Ed. 578 (1887); *Spinkellink v. Wainwright*, 578 F.2d 582, 593–596, (5th Cir.), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1978); *Eason v. State*, 65 Tenn. 466 (1873). A juror who cannot follow the law and instruction of the trial judge on capital punishment is not impartial to the state. *See Spinkellink v. Wainwright, supra*, at 595–596. In *Witherspoon v. Illinois*, 391 U.S. 510, 513–514, 88 S.Ct. 1770, 1772, 20 L.Ed.2d 776 (1968) and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 2960–2961, 57 L.Ed.2d 973 (1978), the Supreme Court held that the trial judge could properly excuse such a juror for cause. The Court went on to say that "[w]e simply cannot conclude, either on the basis of the record now before us *or as a matter of judicial notice*, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction." 391 U.S. at 517–518, 88 S.Ct. at 1774–1775 (emphasis supplied). We find nothing in the record, nor has counsel been able to direct us to evidence, which indicates that the jury, as constituted in

this case, was partial to the state, biased against the appellant, or was not a representative jury on the issue of guilt.

The insistence by appellant that the prospective juror who was excused for cause, Mr. Stone, did not make it unmistakeably clear that he would not consider the death penalty is not borne out by the record. A review of the voir dire examination of Mr. Stone shows that he testified he could not follow the law in considering the range of punishment, that he would not consider the death penalty and would automatically vote against the imposition of a sentence of death, and that he "could not" inflict capital punishment under any circumstances. This testimony made it mandatory for the trial judge to excuse Mr. Stone from service, if the jury were to be impartial.

The admissibility of a photograph of the victim, Stanley Balsinger, into evidence is challenged by appellant on the ground the prejudicial effect of the photograph far outweighed its probative value. The photograph in question shows the position of the deceased's body on the restroom floor, and is relevant to show the location of the bullets found on the floor of the restroom and the paths of those bullets through the deceased's body. We see no abuse of discretion by the trial court in admitting the picture into evidence. *State v. Banks*, 564 S.W.2d 947, 949 (Tenn.1978).

Appellant also insists that the prosecution, in its closing argument, commented on the defendant's failure to testify, and this was error and that the improper argument could have affected the verdict to the prejudice of the appellant.

The record shows that in commenting on the plausibility of the appellant's statement concerning his struggle with Balsinger in the washroom, the prosecutor stated "[h]e was executed by this man that sits before you today as he sat there during the course of this trial, a man who chose to arm himself, who chose to go down . . . ." Counsel for appellant objected to this argument and moved for a mistrial, which was denied.

We do not think the above argument can properly be categorized as a comment on the appellant's failure to testify. But, if so, the comment could not have affected the verdict to the prejudice of the appellant. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Appellant insists further that the evidence was insufficient to sustain a verdict of guilty for first degree murder. Appellant argues specifically that there is no evidence that the killing was deliberate or premeditated. We can not agree. Premeditation is a question of fact to be determined by the jury from all the circumstances of the killing. *State v. LaChance*, 524 S.W.2d 933, 937 (Tenn.1975). A circumstance from which the inference of premeditation may be drawn is repeated shots or blows inflicted upon the victim. *State v. Bullington*, 532 S.W.2d 556 (Tenn.1976); *Franks v. State*, 187 Tenn. 174, 213 S.W.2d 105 (1948). Here, the robbery victim was shot three times. As pointed out by the state, "from the evidence, the jury could infer the following sequence of shots. The victim was originally shot in the mouth while standing, resulting in the lead markings on the (wall) tile about four feet seven inches from the ground. The initial shot was not fatal. After the victim fell, he was shot twice, directly in the heart and in the stomach. This inference is shown from the paths of the bullets and where these bullets were found." We agree with the state that the circumstances of the killing detailed above supports the findings that the killing of Stanley Balsinger was premeditated.

Appellant's remaining assignments of error are directed to the sentencing phase of the trial. Appellant insists the trial court erred (1) in limiting appellant's proof on the issue of mitigation, and (2) in allowing the state to present evidence concerning appellant's suppression hearing testimony. Appellant also insists that Chapter 51, Public Acts of 1977 (Tennessee Code Annotated § 39–2402 et seq.) is unconstitutional. As to the latter assignment, appellant specifically alleges that the Act violates the con-

stitutional protections established by the Eighth and Fourteenth Amendments to the United States Constitution and by Article 1, Sections nine and sixteen of the Tennessee Constitution.

In this state, a trial on a charge of first degree murder is a bifurcated proceeding, with the jury first determining the defendant's guilt or innocence of the charge. Where it is found that the defendant is guilty of first degree murder, a second proceeding is held before the same jury to determine the sentence—either life imprisonment or death—to be imposed. The jury may impose the death penalty only upon finding that one or more aggravating circumstances, listed in the statute, are present, and further that such circumstance or circumstances are not outweighed by any mitigating circumstance.[1] With respect to the evidence that may be introduced on these issues, the statute provides, in T.C.A. § 39–2404(c) that

[i]n the sentencing proceeding, evidence may be presented as to any matter that the court deems relevant to the punishment and may include, but not be limited to, the nature and circumstances of the crime; the defendant's character, background history, and physical condition; any evidence tending to establish or rebut the aggravating circumstances enumerated . . . below; and any evidence tending to establish or rebut any mitigating factors. Any such evidence which the court deems to have probative value on the issue of punishment may be received regardless of its admissibility under the rules of evidence.

After hearing proof presented on the issue of punishment, the jury unanimously found the following statutory aggravating circumstances:

(5) The murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind;

1. T.C.A. § 39–2404(i) provides:
No death penalty may be imposed but upon a unanimous finding, as heretofore indicated, of the existence of one or more of the statutory aggravating circumstances, which shall be limited to the following:
(1) The murder was committed against a person less than twelve years of age and the defendant was eighteen years of age, or older.
(2) The defendant was previously convicted of one or more felonies, other than the present charge, which involved the use or threat of violence to the person.
(3) The defendant knowingly created a great risk of death to two or more persons, other than the victim murdered, during his act of murder.
(4) The defendant committed the murder for remuneration or the promise of remuneration, or employed another to commit the murder for remuneration or the promise of remuneration.
(5) The murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind.
(6) The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another.
(7) The murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit, any first degree murder, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb.
(8) The murder was committed by the defendant while he was in lawful custody or in a place of lawful confinement or during his escape from lawful custody or from a place of lawful confinement.
(9) The murder was committed against any peace officer, corrections official, corrections employee or fireman, who was engaged in the performance of his duties, and the defendant knew or reasonably should have known that such victim was a peace officer, corrections official, corrections employee or fireman, engaged in the performance of his duties.
(10) The murder was committed against any present or former judge, district attorney general or state attorney general, assistant district attorney general or assistant state attorney general due to or because of the exercise of his official duty or status and the defendant knew that the victim occupied said office.
(11) The murder was committed against a national, state, or local popularly elected official, due to or because of the official's lawful duties or status, and the defendant knew that the victim was such an official.
No limitation is imposed on the mitigating factors that may be raised by the defendant. *See* TCA § 39–2404(j). *Cf. Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

(6) The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another[; and]

(7) The murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit any first degree murder, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb.

The jury also unanimously found that there "are no mitigating circumstances sufficiently substantial to outweigh the statutory aggravating circumstance or circumstances so listed above," and fixed appellant's sentence as death by electrocution.

■ In the sentencing hearing, the trial judge permitted the state to show that defendant's testimony in the suppression hearing was contrary to the statement given by him to investigating officers and which formed the basis of his contention at trial that the killing of Balsinger was not premeditated. In the suppression hearing, appellant denied any connection with the killing and, in effect, charged that he had been framed by the police. Appellant also admitted in the suppression hearing that he had been arrested on four different occasions and had been convicted of robbery in 1973 in Washington, D.C. Contrary to the insistence of appellant, we think this evidence was relevant to show the nature and circumstances of the crime and the defendant's character and background history—areas which the parties are specifically allowed to explore in the sentencing hearing—and consequently was admissible. See T.C.A. § 39–2404(c). We are also of the opinion that the consideration of this evidence in the sentencing phase of the trial was not precluded by the holding in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) wherein the court held that a defendant's testimony in a suppression hearing could not be used against him at trial on the issue of guilt.

Here, guilt had been decided by the jury prior to the introduction of the testimony and the evidence is presented only as it bears on the issue of the sentence.

■ Appellant also complains of the action of the trial judge in excluding evidence concerning the effect appellant's trial and possible execution could have on his parents and the societal effects of having appellant executed.

In Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978), the Supreme Court held that the:

Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.

The Court emphasizes, however, in a footnote to this sentence that "[n]othing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." 98 S.Ct. at 2965 n. 12.

T.C.A. § 39–2404(c) is even broader than the requirement set forth in Lockett v. Ohio, supra, and permits the introduction of evidence of "any matter that the court deems relevant to the punishment." But, the evidence tendered by appellant in this case was not relevant to the issue of punishment and was properly excluded.

■ The remaining assignment of error presents a broad attack upon constitutionality of the death penalty and upon the sentencing proceeding providing for the determination by the jury of punishment on conviction for murder in the first degree. T.C.A. Sections 39–2404 et seq. As noted by the state in its brief, appellant "specifically alleges that 1977 Tenn.Pub. Acts Ch. 51 provides for an 'automatic' life sentence thus requiring notice of aggravating circumstances before the sentence can be enhanced. He further contends that the proof of aggravating circumstances after his 'au-

tomatic' life sentence has been imposed violates double jeopardy. The defendant also contends that the statute is vague because of its allowing the jury to 'weigh' aggravating and mitigating circumstances; that Tenn.Code Ann. Section 39–2404(c) . . is unconstitutional because it violates the right to confrontation by allowing the admission of hearsay evidence; that aggravating circumstances 2, 3, and 5 are vague and overbroad; that Tenn.Code Ann. Section 39–2404(h) . . . violates due process because the jury is not informed of the imposition of a life sentence on a hung jury, and that the imposition of a death sentence constitutes cruel and unusual punishment under the Eight Amendment of the united States Constitution and Article I § 16 of the Tennessee Constitution."

As to the latter insistence, this court has previously held that this state is not prohibited from imposing the death penalty in the manner set forth in T.C.A. § 39–2402 et seq. by the restrictions placed on it by the Eighth and Fourteenth amendments of the United States Constitution, and by Article I Sections Nine and Sixteen of the Tennessee Constitution. *See Cozzolino v. State*, 584 S.W.2d 765 (Tenn.1979) and *Miller v. State*, 584 S.W.2d 758 (Tenn.1979).

Appellant also insists that the Tennessee Act, in effect, imposes an "automatic life sentence" at the conclusion of the trial on the issue of guilt. Appellant then reasons from this premise, that the proceeding provided in the Act to follow the jury's finding of guilt for murder in the first degree is something other than a true sentence hearing, but is rather an enhancement of punishment proceeding or a trial for a separate and distinct crime of "aggravated first degree murder." Appellant then reasons further that if the Tennessee Death Penalty Act creates "an enhancement of punishment, it is unconstitutional in that there is no provision requiring notice to be given the defendant of the aggravating circumstances to be proven by the state."

The basic fault with appellant's reasoning is that the Act does not provide for an "automatic life sentence," in any sense other than that life imprisonment is the minimum sentence for first degree murder. No sentence is imposed or can be imposed by the jury until after the "sentencing hearing." T.C.A. § 39–2404(a). The standards provided in T.C.A. § 39–2404 are not elements of the offense but establish guidelines for the exercise of the jury's discretion in determining punishment. Notice of the only aggravating circumstances which can be relied on by the state is provided in T.C.A. Section 39–2404(i). Under the holding in *Spinkellink v. Wainwright*, 578 F.2d 582, 609–610 (5th Cir. 1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796, this statutory notice is sufficient to meet the constitutional requirement of due process.

As to the contention that the statute is vague because it allows the jury to "weigh" aggravating and mitigating circumstances, the Supreme Court has made it clear that a jury must be given guidance in determining punishment when the death penalty is a possible punishment:

> Since the members of a jury will have had little, if any, previous experience in sentencing, they are unlikely to be skilled in dealing with the information they are given [in the sentencing hearing]. . . It seems clear, however, that the problem will be alleviated if the jury is given guidance regarding the factors about the crime and the defendant that the State, representing organized society, deems particularly relevant to the sentencing decision. *Gregg v. Georgia*, 428 U.S. 153, 192, 96 S.Ct. 2909, 2934, 49 L.Ed.2d 859 (1976).

The legislature of Tennessee provided for the necessary guidance of the jury by detailing in the statute the manner in which the jury is to arrive at the punishment, and by instructing the jury to consider evidence of aggravating circumstances and mitigating circumstances as provided in subsections (e), (f), and (g) of Tennessee Code Annotated § 39–2404.[2] Subsection (3) of the act

---

2. (e) After closing arguments in the sentencing hearing, the trial judge shall include in his

instructions for the jury to weigh and consider any mitigating circumstances and any

provides that all evidence introduced at both the guilt and sentencing hearings may be considered by the jury in arriving at punishment.

Under these sections, in arriving at punishment, the jury must first determine whether the state has proved any of the statutory aggravating circumstances beyond a reasonable doubt. If the jury finds that none have been proven according to the required standard, the jury must return a verdict of life imprisonment. T.C.A. § 39–2404(f).

To arrive at a punishment of death, the jury must find that the state has established a statutory aggravating circumstance beyond a reasonable doubt. Additionally, however, the jury must find that the statutory aggravating circumstance is not outweighed by one or more mitigating factors. These separate determinations must be put in writing and given to the trial judge along with the sentence of death, thus assuring that the jury has gone through the correct analysis in arriving at a death sentence. This is the suggested procedure of the Model Penal Code § 201.6, Comment 3, page 72 (Tent. Draft No. 9, 1959), noted with approval by the United States Supreme Court in *Jureck v. Texas,* 428 U.S. 262, 271 n. 6, 96 S.Ct. 2950, 2956 n. 6, 49 L.Ed.2d 929 (1976). This procedure was followed in the instant case with the jury finding three aggravating circumstances and no mitigating circumstances.

T.C.A. § 39–2404(i) and (j) set forth the aggravating and mitigating factors to be considered by the jury in the sentencing hearing, with the admonishment that any factor, not just the specified statutory factors, may be considered in mitigation. These circumstances are presented for the jury to consider and "weigh" in exercising its "controlled" discretion in determining what sentence should be imposed. The jury is not required to return a mandatory verdict of death. It must consider mitigating factors. As to the charge that the statute is vague because of its allowing the jury to "weigh" aggravating and mitigating circumstances, it must be borne in mind that the weighing of evidence is the normal function of the jury. And, where the jury is given adequate guidance as to what to consider, the requirement that the jury weigh aggravating and mitigating factors shown by the evidence does not make the statute vague and, consequently, unconstitutional. *See State v. Pierre,* 572 P.2d 1338, 1347–1348 (Utah 1977), *cert. denied,* 439 U.S. 882, 99 S.Ct. 219, 58 L.Ed.2d 194 (1978).

The appellant also raises the issue of the admission of hearsay evidence against him in the sentencing hearing and insists that this violates his right to confrontation and thus renders the statute unconstitutional. As pointed out by the state, "no inadmissible hearsay was admitted against the defendant. The only hearsay evidence admitted were admissions and statements by the

of the statutory aggravating circumstances set forth in subsection (i) of this section which may be raised by the evidence at either the guilt or sentencing hearing, or both. These instructions and the manner of arriving at a sentence shall be given in the oral charge and in writing to the jury for its deliberations.

(f) If the jury unanimously determines that no statutory aggravating circumstances have been proved by the state beyond a reasonable doubt, or if the jury unanimously determines that a statutory aggravating circumstance or circumstances have been proved by the state beyond a reasonable doubt but that said circumstance or circumstances are outweighed by one or more mitigating circumstances, the sentence shall be life imprisonment. The jury shall then return its verdict to the judge upon a form provided by the court . . . . .

(g) If the jury unanimously determines that at least one statutory aggravating circumstance or several statutory aggravating circumstances have been proved by the state beyond a reasonable doubt, and said circumstance or circumstances are not outweighed by any mitigating circumstances, the sentence shall be death. If the death penalty is the sentence of the jury, the jury shall (1) reduce to writing the statutory aggravating circumstance or statutory aggravating circumstances so found and (2) signify that there were no mitigating circumstances sufficiently substantial to outweigh the statutory aggravating circumstance or circumstances so found. These findings and verdict shall be returned to the judge upon a form provided by the court . . . . .

defendant. This evidence is properly admitted. *See Buckingham v. State*, 540 S.W.2d 660, 663–664 (Tenn.Cr.App.1976) *cert. denied*, 429 U.S. 1049, 97 S.Ct. 759, 50 L.Ed.2d 764 (1977); *Sheets v. Hathcock*, 528 S.W.2d 47, 50 (Tenn.Cr.App.1975)."

Appellant further charges that T.C.A. § 39–2404(h) violates due process in that it deprives the jury of "accurate sentencing information." This section provides:

If the jury cannot ultimately agree as to punishment, the judge shall dismiss the jury and the judge shall impose a sentence of life imprisonment. The judge shall not instruct the jury, nor shall the attorneys be permitted to comment at any time to the jury, on the effect of the jury's failure to agree on a punishment.

This statute does not deprive the jury of any knowledge of relevant evidence or aggravating circumstances or mitigating circumstances, necessary for them to fix punishment. It does no more than prevent the judge and counsel from informing the jury of the effect of its disagreement on which sentence should be imposed. The after-effect of a jury's deliberation is not a proper consideration for the jury. *See Farris v. State*, 535 S.W.2d 608, 614 (Tenn. 1976).

Having concluded that the Tennessee Death Penalty Act is constitutional and finding no prejudicial error committed in the trial the judgment entered in the trial court of death by electrocution is affirmed. The date of the execution is set for May 15, 1980.

FONES and HARBISON, JJ., and JOHN K. BYERS, Special Justice, concur.

HENRY, J., dissents.

HENRY, Justice, dissenting.

I respectfully dissent from the action of the Court in affirming the conviction of first degree murder and the sentence of death by electrocution.

I.

We deal with a case of murder in the *second* degree—only that and nothing more.

The killing in this case was accomplished by the use of a deadly weapon, thereby raising a presumption of the existence of malice sufficient to support a conviction of second degree murder. *Thomas v. State*, 210 Tenn. 297, 358 S.W.2d 315 (1962). This presumption thrusts upon the defendant the burden of reducing the degree of homicide and upon the State the burden of establishing that the killing was murder in the first degree. *Bailey v. State*, 479 S.W.2d 829 (Tenn.Cr.App.1972). Neither has carried this burden.

This murder was committed in a small, unlighted service station rest room. There were no eyewitnesses and the *only* proof comes from the confession of the defendant:

I stopped to make a phone call, we stopped right behind the Gulf Service Station. I walked down to use the phone to call my cousin. When I went to the service station the attendant was going into the bathroom. I guess to check something. I started towards him to ask if they had a telephone. I did ask him. I noticed a green wallet sticking out of his right pocket, I just decided to take it. I had no place to live in the last week, my old lady, my wife and I split up. When I approached him, when I stepped towards him, I pulled the gun out of my waist band, he saw me and grabbed the pistol barrel and we tassled for a good three–five (3–5) minutes, I told him to give me the money, he said no, he had the pistol pointed towards me, and was trying to pull the trigger by putting his thumb against my forefinger. He said this damn thing won't fire will it. I said, man just give me the money, he said no way, the other man will be around here in a few minutes. I said man just let me go out of the bathroom, just let me out of the bathroom, just let me get away. Both of us were still wrestling for the pistol, the bathroom door shut and it was dark, and we were just wrestling, I was trying to pull the pistol out of his hand, and the pistol started going off, it started

going off. It fired about 2, 3, 4 times. When I opened the door to go out I saw the billfold and I picked it up and ran back to the car.

There is no occasion for the application of the general law that the verdict of a jury, approved by the Trial Judge, accredits the testimony of the witness for the State and resolves all conflicts in favor of the theory of the State. *State v. Hatchett*, 560 S.W.2d 627 (Tenn.1978). There were no conflicts. There was no other proof. The defendant exercised his constitutional right to remain silent and did not testify. The confession was read to the jury by a police officer. It tells the whole story.

The use of a deadly weapon makes it second degree murder. The State offered no proof to raise it to murder 1; the defense offered none to reduce it to a lower degree of homicide.

Nor may it be raised to first degree murder by the application of the statute governing felony murder. The defendant was indicated on three counts, viz.: felony murder, common law murder and armed robbery. The State was apparently apprehensive about the sufficiency of the proof on either murder count and felt it necessary to obtain a conviction of armed robbery. It noted, in open court, that this Court had held that a person could not be convicted of both the felony murder and the underlying felony and, therefore, moved to enter a *nolle prosequi* as to felony murder, leaving the State free to seek convictions both for common law murder and armed robbery. There is no explanation for this trial tactic since a finding of armed robbery added nothing to a capital case unless the State's assessment of the sufficiency of its evidence led to the belief that the trial would not result in a verdict inflicting the death penalty.

The result of this action on the part of the State was that it took on the burden of premeditation in the face of a confession—the sole evidence—which negated it. Thus the State lost the benefit of the rule that the indispensable element of premeditation is supplied by a murder occurring during the perpetration of a felony.

Premeditation is the distinguishing and essential characteristic of murder in the first degree, which involves a previously formed design or actual intention to kill. *Clarke v. State*, 218 Tenn. 259, 402 S.W.2d 863 (1966). Premeditation may, of course, be inferred from the circumstances of the killing; however, here the proof of the circumstances is solely in the confession which negates premeditation.

And it is true that repeated blows, shots or other acts of violence are sufficient evidence of premeditation. *McGill v. State*, 4 Tenn.Cr.App. 710, 475 S.W.2d 223 (1972). Here, there were three shots, but accordingly to the *only* proof, they were fired as a result of and during the course of wrestling between the victim and defendant in close quarters and in a dark room when defendant was attempting to disengage himself. We may speculate, we may guess, we may conjecture to the contrary, but this is the proof, the whole proof and we have nothing but the proof. We have no premeditation. Its existence may only be declared by this Court.

Premeditation is "a settled purpose and fixed design." *Swan v. State*, 23 Tenn. 136 (1843). More than a century ago, Justice Nathan Green, speaking for the Court in *Dale v. State*, 18 Tenn. 551 (1837), put the matter in eloquent phraseology:

> [T]he killing must be done *wilfully*, that is, of purpose, with *intent* that the act by which the life of a party is taken should have that effect; *deliberately*, that is, with cool purpose; *maliciously*, that is, with *malice aforethought*; and with *premeditation*, that is, a design must be formed to kill, before the act, by which the death is produced, is performed. In other words, "proof must be adduced to satisfy the mind that the death of the party slain was the *ultimate result which the concurring will, deliberation, and premeditation of the party accused sought.*" (Emphasis supplied). 18 Tenn. at 552.

This case fails the test.

It is fundamental that there must be a constitutionally adequate evidentiary basis

to sustain any criminal conviction. "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 309, 99 S.Ct. 2781, 2784, 61 L.Ed.2d 560 (1979) (quoting from *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)).

Under the holdings of *Winship* and *Jackson,* we must analyze the record in a criminal appeal to insure that the evidence supports a conviction beyond a reasonable doubt. Any lesser standard will not protect against a violation of the Due Process Clause of the Fourteenth Amendment or from the mandate of our own constitution.

Moreover, Rule 13(e), Tenn.R.App.P., specifically provides that "[f]indings of guilt in criminal actions . . . shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."

This language is plain; its mandate is clear.

I cannot say on this record that this defendant was guilty of murder in the first degree beyond a reasonable doubt. To do so I would have to base my decision on conjecture, speculation and suspicion. This, no court may do, because we are mandated to apply a standard requiring proof beyond a reasonable doubt. *United States v. Carter,* 173 U.S.App.D.C. 54, 522 F.2d 666 (D.C. Cir. 1975). Absent a factual or evidentiary basis, we may not infer the premeditation necessary to support this conviction. An inference of guilt may not be based upon conjecture or surmise.

We deal with the life of a human being.

I cringe at the thought of sending this defendant to the electric chair on the basis of a conjecture that his uncontradicted version of the fatal events is false. I find it difficult in a death case to give full faith and credit to his admission that he killed and robbed the victim and simultaneously to reject out-of-hand his explanation of all details favorable to him. I remind again that we do not deal with a felony murder prosecution.

I would reduce this conviction to murder in the second degree and the sentence to life imprisonment and direct that the armed robbery sentence be served consecutively.