**STATE of Tennessee, Appellee,**

v.

**Woodrow Wilson HONEYCUTT, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

April 17, 1985.

Permission to Appeal Denied July 8, 1985.

Richard A. Spivey, Kingsport, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Jane W. Young, Asst. Atty. Gen., Nashville, Phyllis Fitzwilson, R. Jerry Beck, Asst. Dist. Attys. Gen., Blountville, for appellee.

## OPINION

DWYER, Judge.

Appellant appeals as of right from his convictions for committing murder in the first degree, T.C.A. § 39–2–202, and for assault to commit murder in the first degree, T.C.A. § 39–2–103. He received a life sentence and a fifteen-year concurrent sentence. He presents two issues: whether the evidence is sufficient and whether the trial court erred by allowing a photograph into evidence over objection.

Around 9:30 p.m. on December 18, 1982, appellant shot and killed his "common-law" wife in her home in Kingsport. The daughter of the decedent was spending the night in her mother's home. She related that appellant approached her mother, who was in a wheelchair, and stated, "I'm going to kill you." He shot her mother, and the girl sought sanctuary in her bedroom. Appellant then told her that she was next. He fired two shots through the door which missed. The girl heard another shot and opened the door. Appellant went out the front door, leaving it open. The victim was dead from four gunshot wounds, one which severed the aorta.

Appellant testified that he had consumed a large quantity of beer, wine, and vodka earlier in the day and had no recall of the events. His theory of defense was that his alcoholism, strokes, and a heart attack caused his mind to come and go. An expert testified that appellant was an alcoholic, but was competent to stand trial. Two experts, testifying for the State, related that appellant had the mental capacity to appreciate the wrongfulness of his acts and could conform his conduct to the requirements of law. *Graham v. State,* 547 S.W.2d 531 (Tenn.1977). The victim's daughter and the arresting officer testified that appellant was not drunk. Under these circumstances, a question of fact as to the alleged intoxication was presented to the jury. *See State v. Bullington,* 532 S.W.2d 556 (Tenn.1976). The jury by its verdict has obviously rejected the theory of appellant. The jury could infer that the homi-

cide was committed with premeditation from the statement, "I'm going to kill you," and from the repeated shots. *Houston v. State*, 593 S.W.2d 267 (Tenn.1980). On appeal, we view the evidence in the strongest legitimate light to the theory of the State. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn.1978). The evidence reflects that, for whatever reason, a crotchety elderly man, who perhaps fortified his nerve somewhat with alcohol, shot a crippled, defenseless woman confined to a wheelchair in her own home. Such conduct should be banished from a civilized society. It was best said by our Supreme Court:

> The history of criminals and criminal trials shows that he who has not learned betimes to restrain the evil inclinations of our nature—envy, malice, revenge, and their kindred passions—but has a sufficiency of moral sense left to deter him from the commission of enormity while sober, will often "screw his courage to the sticking point" by the free use of ardent spirits, and, thus made able to silence the twinges of his conscience, will voluntarily imitate the demon. But let courts once approve the doctrine now contended for, and it will not be resorted to as a plea by persons of this description alone; but even the cold-blooded calculating assassin will never be a sober homicide. He will always exhibit himself at the bar of a court of justice as a specimen of insanity produced by drunkenness. And thus this degrading and disgraceful, yet too common, vice, instead of being hunted from society as the bane of good morals and social and domestic happiness, will be converted into a shield to protect from punishment the worst of crimes. All civilized governments must punish the culprit who relies on so untenable a defense; and in doing so they preach a louder lesson of morality to all those who are addicted to intoxication, and to parents and to guardians, and to youth and society, than "comes in the in the cold abstract from pulpits."

> In order to be clearly understood, we have supposed the strongest case—a case of entire prostration of intellect im-

mediately occasioned by drunkenness—and have said that that constitutes no excuse. Instances, however, of heinous offenses, committed under such circumstances, are believed to be of rare occurrence. They are much oftener the result of that midway state of intoxication which, although sufficient to stimulate the evil-disposed to actions correspondent with their feelings, would not excite the good man to criminal deeds. It is generally the drunken man acting out the sober man's intent. He says and does when drunk what he thinks when sober.

*Atkins v. State*, 119 Tenn. 458, 488–89, 105 S.W. 353 (1907). There is little that we can add to the above other than an "amen" and state that the evidence issue is overruled.

■ The last issue: The trial court examined a photograph that shows the decedent sprawled in her wheelchair. The photograph does not vividly depict the wounds caused by the shots. The trial court allowed the photograph into evidence, for it showed the victim's position when she was shot the last time. There is no error here. *Compare and contrast State v. Banks*, 564 S.W.2d 947 (Tenn.1978). This issue is overruled.

The judgment of the trial court is affirmed.

CORNELIUS and SCOTT, JJ., concur.