**STATE of Tennessee, Appellee,**

v.

**Wendell WITHERSPOON, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Dec. 29, 1988.

Permission To Appeal Denied by Supreme Court April 3, 1989.

Charles W. Burson, Atty. Gen., Charles E. Bush, Asst. Atty. Gen., Thomas M. Bottoms, Dist. Atty. Gen., Robert C. Sanders, Asst. Dist. Atty. Gen., for appellee.

John R. Parkes, and Bobby W. Sands, Columbia, for appellant.

OPINION

BIRCH, Judge.

The Circuit Court of Maury County entered judgment upon the jury verdict which convicted Wendell Ray Witherspoon, the defendant, of assault with intent to commit first-degree murder. The trial judge sentenced the defendant within Range II to life imprisonment.

In this appeal of right pursuant to Tennessee Rules of Appellate Procedure, Rule 3(b), the defendant contends that the evidence is insufficient to support the verdict of the jury, and that the sentence is improperly within Range II and is excessive. The judgment is affirmed.

The facts necessary for our resolution of the issues, as appear of record, indicate that Wendell and Vickie Witherspoon lived apart because of marital difficulties. On February 15, 1987, Roberta Witherspoon (defendant's mother) and Rosemary Smith (Vickie Witherspoon's friend) drove the Witherspoon children to visit their father, the defendant, at his residence. At the conclusion of the visit, the defendant told Ms. Smith and his mother to "put the kids in the car and keep them down." Defendant then placed a long gun in the trunk of the car, remarking that he was going to "take care of" his wife. He accompanied them on the return trip to Roberta Witherspoon's house. Upon arrival, the defendant directed Ms. Smith to stop the car some distance from the Smith house, which was located across the street from the house in which Vickie Witherspoon still lived. The defendant told Roberta Witherspoon to "get the kids in the house, shut the doors, and pull the blinds down." The defendant then took up a position behind some bushes close to his wife's house so as not to be noticed. As soon as Vickie Witherspoon arrived and entered her home, the defendant rushed in and dragged her outside the house by her hair, telling her that he wanted to talk to her.

Once outside the house, Vickie Witherspoon clung to a porch post in an effort to

escape, but the defendant simply pulled both her and the post from the porch. Brandishing the shotgun, defendant told her "I'm going to kill you." He pushed her down and fired the shotgun into her face. Saying that "I'm going to make you where no other man will ever want you," defendant positioned the shotgun muzzle under her breast and shot. The pellets traversed completely through the breast and came out on the other side. Already bleeding profusely from wounds to face and breast, and fearful that defendant was about to re-load the gun, Vickie Witherspoon managed to stagger to Roberta Witherspoon's back door. Roberta Witherspoon refused to let her in, and, despite her obvious acute distress, did nothing to help her.

Cursing her all the while, the defendant then dragged her back into the yard. He shot her in the hand; as the victim was pleading for her life, the defendant shot her in the shoulder.

Vickie Witherspoon was able to escape to a neighbor's door with the defendant in close pursuit. The neighbor withheld aid because the defendant, still armed with the shotgun, threatened, "If you let her in I'll hurt you, I don't want to hurt nobody, but if you let her in I will."

As if this were not enough, the defendant kicked the fallen victim in the head and beat her with the shotgun.

The wounds blinded her in one eye and necessitated its surgical removal, deprived her of the rightful use of her shoulder and chest muscles, collapsed one of her lungs, and paralyzed her left hand.

She is recuperating slowly, but has not fully recovered. More surgery is necessary.

The defendant was arrested and given the *Miranda* warnings. He stated to Detective Don Rose, Columbia Police Department, that Vickie Witherspoon had tried to take the shotgun from him and that he had accidentally shot her.

At trial, the defendant testified that he had consumed maybe, "four or five cases of beer," some whiskey, and "approximately eight 10 mg. Valium tablets," all within approximately twenty-four hours before the incident; he stated that he had no recall whatsoever of the events shortly before or after the shooting.

## SUFFICIENCY OF THE EVIDENCE

The fundamental issue in the defendant's sufficiency challenge is his contention that the evidence shows his intoxication to a degree which rendered him incapable of forming the specific intent required for guilt of first-degree murder, hence, he could not be guilty of assault with intent to commit first-degree murder.

■ The crime of assault with intent to commit first-degree murder is a specific-intent crime; that is, before an accused may be convicted, the state must prove that the assault was of such character and made under such circumstances that, had death resulted, the defendant would have been guilty of first-degree murder. *Dains v. State*, 21 Tenn. 439, 440 (1841).

Premeditation and deliberation are essential elements of first-degree murder and of assault with intent to commit first-degree murder.

Consequently, when the inquiry is whether the defendant premeditated and deliberated, it becomes necessary to determine whether the defendant was intoxicated, and if so, the extent of its effect upon his mental state. Of course, if the accused's voluntary intoxication existed to such an extent that he was incapable of premeditating and deliberately designing to kill, the defendant could not be convicted of assault with intent to commit first-degree murder. *See Mullendore v. State*, 183 Tenn. 53, 60, 191 S.W.2d 149, 151 (1945). This incapability would reduce the degree of the attempted murder from first degree to second degree. *See Harrell v. State*, 593 S.W.2d 664, 670 (Tenn.Crim.App.1979), *p.t.a. denied* January 28, 1980.

The defendant testified that within approximately 24 hours before the assault, he

consumed four or five cases of beer, some whiskey, and eight 10 mg. Valium tablets.

■ The resolution of issues involving state of mind in cases such as the one under review is generally made more difficult because of lack of direct evidence on the issue. In this case, however, neither dearth of facts nor ambiguity impedes our analysis, for the proof quite clearly shows that defendant wanted to kill Vickie Witherspoon, that he made meticulous and cunning preparations so to do, and that he ruthlessly executed his plan.

Although the other evidence is strong, the defendant's conduct in positioning himself in the bushes as if lying in wait is perhaps the strongest indicator of premeditation and deliberation. Indeed, our statute provides that the act of lying in wait may alone provide the elements of premeditation and deliberation necessary for first-degree murder. Tenn.Code Ann. § 39–2–202 (1982). This interpretation is supported by case authority. *See State v. Bullington,* 532 S.W.2d 556, 560 (Tenn. 1976).

An additional strong circumstance from which the inference of premeditation may be drawn is repeated shots and other blows inflicted upon the victim. *See Houston v. State,* 593 S.W.2d 267, 273 (Tenn.1980), *cert. denied* 449 U.S. 891, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980); *State v. Story,* 608 S.W.2d 599, 601 (Tenn.Crim.App.1980), *p.t. a. denied* November 3, 1980. Here, the victim was shot four times at intervals and kicked and beaten about the head. Further, each shot was dispatched and the other injuries were inflicted while the victim was unarmed, kneeling or prostrate, helpless, and begging for her life.

But there are yet additional circumstances which shed light on premeditation and deliberation: namely, the defendant

1. Made several discrete declarations of intent to kill Vickie Witherspoon;
2. Obtained shotgun and shells;
3. Directed others to take precautions for the children's safety;
4. Expressed concern that the children not witness events to follow;
5. Directed where to park the car;
6. Expressed extreme hostility toward the victim by verbal abuse throughout the incident; and
7. Threatened those who would have rendered aid to the victim.

Our view of the evidence notwithstanding, whether the defendant premeditated and deliberated is a question which must be determined by a jury from all the circumstances. *See Houston,* 593 S.W.2d at 273; *Story,* 608 S.W.2d at 601.

In reviewing the evidence upon appeal for the purpose of determining its sufficiency, we must accept the verdict as having established the credibility of the state's witnesses to the extent that only if a rational trier-of-fact is unable to find guilt beyond a reasonable doubt will we disturb the conviction.

Considering sufficiency, we find that there was a staggering amount of cogent evidence from which any rational trier-of-fact could find all of the elements of the offense of assault with intent to commit first-degree murder, beyond a reasonable doubt. The evidence exceeds the requirements of Tennessee Rules of Appellate Procedure, Rule 13(e), and *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979). This issue is overruled.

■ For his sentencing issue, the defendant challenges the trial judge's finding that he committed an "especially aggravated offense," thereby subjecting him to Range II sentencing.

To understand and resolve this contention, it is necessary to examine several interrelated statutes.

The defendant was convicted for violating Tenn.Code Ann. § 39–2–103 (1982), assault with intent to commit first-degree murder, for which the punishment is imprisonment for a term between five years and twenty-five years. But if "bodily injury" results, the punishment is between five

years and life. Tenn.Code Ann. § 39–2–103(a), (b).

Under usual circumstances, the defendant would have been sentenced to a Range I term (between five and thirty-two years, Tenn.Code Ann. § 40–35–105(a)). But if the offense is found to be an "especially aggravated" one, Range II punishment (between thirty-three years and life) is mandated by Tenn.Code Ann. § 40–35–107.

An offense may be classified as an "especially aggravated offense" if during its commission the defendant willfully inflicted "serious bodily injury." Tenn.Code Ann. § 40–35–107(2).

The state gave proper notice of intention to seek sentencing for an "especially aggravated offense" based on the willful infliction of "serious bodily injury," pursuant to Tenn.Code Ann. § 40–35–107(2).

Tenn.Code Ann. § 40–35–107(6)(B) defines "serious bodily injury" as including bodily injury which involves a substantial risk of death; unconsciousness; extreme physical pain; protracted and obvious disfigurement; or protracted loss or impairment of the function of a bodily member or organ.

Tenn.Code Ann. § 40–35–107(6)(A) defines "bodily injury" as including a cut, abrasion, bruise, burn, or disfigurement; physical pain; illness or impairment of the function of a bodily member, organ, or mental faculty.

Under Tenn.Code Ann. § 40–35–107(7)(A), an essential element of the crime must not also be used to turn the offense into an "especially aggravated" one.

The defendant contends that these statutory provisions support his argument since "serious bodily injury" is an element of the offense, Tenn.Code Ann. § 40–35–107(7)(A) prohibits its further use as the basis for finding the offense to be an "especially aggravated one." Thus, he continues, the Range II sentence is improper.

We disagree. "Bodily injury" is an essential element of the crime for which defendant was convicted—"serious bodily injury" is not. In our view, it makes no difference that the indictment charges "serious bodily injury," because mere "bodily injury" is required. The jury instructions are not included in the record, and we have no way of determining whether "serious bodily injury" is mentioned as an element of the offense. On this point, however, the record before us indicates that the jury verdict, endorsed upon the indictment, reads simply, "We the jury find the defendant guilty of the charge of assault with intent to commit murder first degree." In any event, the term "serious" in the indictment as it is used to modify "bodily injury" is surplusage. *See State v. Hopper*, 695 S.W.2d 530, 535 (Tenn.Crim.App. 1985), *p.t.a. denied* June 3, 1985. Its use cannot enlarge the essential elements of the offense. *See State v. Hammons*, 737 S.W.2d 549, 554–55 (Tenn.Crim.App.1987), *p.t.a. denied* September 8, 1987.

Because the defendant clearly inflicted "serious bodily injury" as differentiated from "bodily injury," elevation of the offense to Range II status is fully justified.

■ We have searched the record for mitigating factors under Tenn.Code Ann. § 40–35–110 (1982) and have found none.

As for enhancement factors under Tenn.Code Ann. § 40–35–111 (1982), we find

1. Defendant has a previous history of criminal convictions or criminal behavior: including thirty-seven incidents of which eleven clearly involved violence or the threat of violence. *See* Tenn.Code Ann. § 40–35–111(1).

2. Defendant treated the victim with exceptional cruelty during the commission of the offense. *See* Tenn.Code Ann. § 40–35–111(5).

3. Defendant employed a firearm during the commission of the offense. *See* Tenn.Code Ann. § 40–35–111(9).

We have considered each factor within the totality of all the circumstances of the case.

We conclude that the sentence of life imprisonment imposed by the trial judge is an appropriate sentence. When considered in light of the purposes of sentencing, Tenn.Code Ann. § 40–35–102 (1982), and sentencing considerations, Tenn.Code Ann. § 40–35–103 (1982), the sentence of life imprisonment is no greater than that deserved for the offense committed, and is the least severe measure necessary to achieve the purposes for which the sentence is imposed.

We conclude by affirming the judgment of conviction and by adopting the sentence imposed.

DWYER and JONES, JJ., concur.