IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 9, 2020

FILED
05/25/2021
Clerk of the
Appellate Courts

## STATE OF TENNESSEE v. DEMON L. ADKINS

**Appeal from the Criminal Court for Davidson County**
**No. 2018-A-90      Steve R. Dozier, Judge**

_____

### No. M2019-02284-CCA-R3-CD

_____

The Defendant, Demon L. Adkins, was convicted after a jury trial of two counts of possessing contraband in a penal institution, and he received an effective fifteen-year sentence as a career offender. On appeal, the Defendant argues that his convictions are invalid because the indictment erroneously stated the incorrect mens rea and because the verdict forms and jury instructions conflated the crime of possessing contraband in a penal institution and introducing contraband into a penal institution. He also asserts that the savings statute operates to entitle him to a lesser punishment. We conclude that he is not entitled to reversal of his convictions but that the savings statute applies to provide a lesser penalty. Accordingly, the convictions are affirmed, the sentences are reversed, and the case is remanded for resentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part; Reversed in Part; Case Remanded**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Martesha Johnson, District Public Defender; and Emma Rae Tennent, (on appeal) and Jason Chaffin and Tanner Gibson (at trial), Assistant Public Defenders, for the appellant, Demon L. Adkins.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Assistant Attorney General; Glenn Funk, District Attorney General; and J. Wesley King and Sean Roberts, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

Two controlled substances, consisting of one strip of suboxone and 0.04 grams of methamphetamine, were discovered in the Defendant's eyeglasses case as he was leaving Riverbend Maximum Security Institution to attend a trial in Davidson County. The Defendant was indicted for violating the prohibition against contraband in a penal institution. Count 1 of the indictment charged that the Defendant, identified as "DEMON L. ADKINS, a.k.a. DEMOND LEE ADKINS, a.k.a. DEMONT L. ADKINS, a.k.a. DAMON L. ADKINS":

> knowingly and intentionally did have in his possession, Suboxone, while present in Riverbend Maximum Security Institution, a state institution, where prisoners are quartered, under custodial supervision, without the express written consent of the chief administrator of the institution, in violation of Tennessee Code Annotated § 39-16-201, and against the peace and dignity of the State of Tennessee.

Count two used identical language but identified the contraband as methamphetamine. The statute at issue required the conduct to be knowing but did not require it to be intentional.

During opening statements, the State summarized the elements of the offenses as: "[t]o knowingly possess [the controlled substance] while in a penal institution where inmates are under custodial supervision and without permission, in addition to what is on there." The theory of the defense was that the Defendant, who had come into and out of the institution several times and was aware he would be very thoroughly searched, would not have knowingly possessed drugs passing through security.

The Defendant does not challenge the sufficiency of the evidence, but, in brief, the evidence at trial was that the Defendant was found in possession of the drugs on his way to court. The State presented witnesses who testified that the Defendant's eyeglass case was searched at approximately 7:00 a.m. on September 26, 2017, as he was leaving Riverbend Maximum Security Institution, a penal institution, to attend trial in Davidson County. Two officers had retrieved the Defendant from a cell where the Defendant was housed alone. One of the officers asked the Defendant what items he wished to take with him, and the Defendant indicated he wished to take some papers and his eyeglasses case. An officer carried these items from the cell to the intake area, where the items were searched while the Defendant underwent a strip search. A small, folded piece of paper in the eyeglasses case contained two individually wrapped packages. Field testing at the

- 2 -

facility and testing at the Tennessee Bureau of Investigation revealed that the packages contained one strip of suboxone and 0.04 grams of methamphetamine. The State also introduced video showing the movements of the officers during the search, and it introduced two recorded telephone calls that the Defendant had made. During one call, the Defendant told a woman that he "got popped with some ice and suboxone…. They popped me real big. But at the end of the day, they don't know if they found it, or … if they got it off of me." In another call, he stated he was bored because there was nothing "to get high off."

Officers at the prison and officers who worked in transportation for the Department of Correction acknowledged that the Defendant had passed through security at the institution several times and would have known that both his person and his belongings would be subjected to a thorough search. In addition, officers from the Department of Correction testified that when they accompanied an inmate to court, they would remain with the inmate for essentially the entire duration of the day. One transportation officer stated that the Defendant did not have permission to possess the suboxone or methamphetamine, and another transportation officer confirmed that he was not aware that the Defendant had permission to possess the substances.

The statutory provision prohibits both possession of and introduction of contraband into a penal institution, and these offenses have different elements. The jury instructions tracked the statutory language regarding possession of contraband in a penal institution and also tracked the language in the indictment, but the offense was identified in the instructions as "INTRODUCING CONTRABAND INTO A PENAL INSTITUTION." *See* T.C.A. § 39-16-201(b) (2017). The statute required, and the jury was instructed to find, that the possession of the contraband must be committed knowingly. *See id.* The verdict form instructed the jury to either find the Defendant "guilty of introducing contraband into a penal institution" or "not guilty." The jury found the Defendant guilty of both counts.

Prior to the Defendant's September 2019 sentencing, the statute was amended to classify possession of controlled substances in a penal institution as a Class D rather than a Class C felony. 2019 Tenn. Pub. Acts, c. 486, § 7, eff. July 1, 2019. At sentencing, the Defendant's older brother and a close friend testified that the Defendant had made changes in his life the last time he was released from prison and that they would support him if he were out of prison. They testified that the Defendant had a substance abuse problem and could benefit from treatment outside a penal institution. The Defendant also testified that he wanted to make a change in his life. He said that he wanted to attend substance abuse treatment outside of a penal institution because drugs were too readily available at the prison treatment centers. He acknowledged his extensive and violent criminal history, but he stated that he had never been accused of a crime where someone

was injured, except the conviction for which he was imprisoned "where the officers said they [were] injured." The trial court found the Defendant had a past history of criminal behavior but that his conduct in this case did not cause or threaten serious bodily injury. The court concluded that its sentencing discretion was limited because the Defendant was a career offender, and it imposed concurrent sentences of fifteen years for two Class C felonies to be served with a sixty percent release eligibility.

After sentencing, the Defendant moved to vacate and dismiss the convictions on the basis that the indictment charged him with possession of contraband in a penal institution and that the jury convicted him of introducing contraband into a penal institution. The Defendant noted that the proof at trial only supported possession and argued that the indictment was constructively amended.

The trial court found that there was no constructive amendment. It noted that the jury was appropriately charged with the elements of the offense of possession of contraband in a penal institution. The court noted that the title of the subsection was "Introduction or Possession of Weapons, Explosives, Intoxicants, or Drugs into a Penal Institution Where Prisoners are Quartered" and that the trial court was following the pattern jury instructions when it instructed the jury, "Any person who commits the offense of introducing contraband into a penal institution is guilty of a crime." *See* 7 Tenn. Prac. Pattern Jury Instr.—Crim. 23.01. The trial court denied the motion to dismiss and the motion for a new trial, and the Defendant appeals.

## ANALYSIS

### I. Error in Indictment

The Defendant asserts that the indictment does not charge a valid offense because the statute did not require the Defendant to act intentionally but the word "intentionally" was included in the indictment. The State responds that the indictment was valid. We review the validity of an indictment de novo, *State v. Smith*, 492 S.W.3d 224, 239 (Tenn. 2016), and we conclude that because the indictment sufficed to adequately apprise the Defendant of the offense with which he was charged, to furnish a basis for entry of judgment, and to protect against double jeopardy, it was not invalidated by the inclusion of the word "intentionally."

Although the Defendant did not raise the issue prior to trial, the indictment's alleged failure to charge an offense is not subject to waiver and may be raised at any time during the proceedings. Tenn. R. Crim. P. 12(b)(2)(B) (listing as motions that must be made prior to trial "a motion alleging a defect in the indictment, presentment, or information — but at any time while the case is pending, the court may hear a claim that

the indictment, presentment, or information fails to show jurisdiction in the court or to charge an offense"); *see State v. Nixon*, 977 S.W.2d 119, 120 (Tenn. Crim. App. 1997). Other, lesser, defects in the indictment, including "defects in the indictment that go to matters of form rather than substance," must be challenged prior to trial. *Nixon*, 977 S.W.2d at 121; *see* Tenn. R. Crim. P. 12(b)(2)(B). Here, the Defendant alleges that the indictment failed to charge an offense.

The United States Constitution and the Tennessee Constitution guarantee an accused the right to be informed of the nature and cause of the accusation against him. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. An indictment must function to: "'1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy.'" *Smith*, 492 S.W.3d at 239 (quoting *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997)). The touchstone for constitutionality is whether the accused is provided sufficient notice of the charges against him. *Hill*, 954 S.W.2d at 729.

The Defendant points to the inclusion of "intentionally" in the indictment when the offense required the State to establish only that the Defendant acted "[k]nowingly." *See* T.C.A. § 39-16-201(b)(2). An indictment need not list the mens rea if "the required mental state may be inferred from the nature of the criminal conduct alleged." *Hill*, 954 S.W.2d at 729. "'[A]n indictment which references the statute defining the offense is sufficient and satisfies the constitutional and statutory requirements' for a charging instrument." *State v. Duncan*, 505 S.W.3d 480, 488 (Tenn. 2016) (quoting *State v. Hammonds*, 30 S.W.3d 294, 300 (Tenn. 2000)); *see State v. Sledge*, 15 S.W.3d 93, 95 (Tenn. 2000) (concluding that when the indictment failed to include the mens rea but cited to the relevant statute, the mental state could be inferred). "In other words, citing the statute in the indictment provides the defendant with notice regarding the mens rea of the offense, gives notice regarding the offense upon which to enter judgment, and protects against future prosecution for the same offense." *Smith*, 492 S.W.3d at 239. This court avoids "'pettifogging, technicality or hair splitting'" when the indictment is sufficient to allow the accused to know the charge. *Id.* at 241 (quoting *Hill*, 954 S.W.2d at 728, and concluding that the indictment was not invalid when it charged the defendant with "threatening to" commit domestic assault but the statute required the State to prove that the defendant "attempted to" cause or caused bodily injury or committed or attempted to commit an assault). The indictment need not allege the theory or means by which an offense is committed and alternative means need not be listed so long as the accused has sufficient notice of the charge. *Duncan*, 505 S.W.3d at 490; *Hammonds*, 30 S.W.3d at 302. A defendant may move for a bill of particulars when the indictment meets constitutional requirements but the defendant desires more information about the nature of the conduct at issue. *Hammonds*, 30 S.W.3d at 303.

Here, the indictment referenced the statute prohibiting contraband in a penal institution, which outlines the elements of possessing contraband and the elements of introducing contraband into a penal institution. Under the statute in effect at the time of the offense:

(b) It is unlawful for any person to:

(1) Knowingly and with unlawful intent take, send or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision any weapons, ammunition, explosives, intoxicants, legend drugs, or any controlled substances or controlled substance analogues found in chapter 17, part 4 of this title;

(2) Knowingly possess any of the materials prohibited in subdivision (b)(1) while present in any penal institution where prisoners are quartered or under custodial supervision without the express written consent of the chief administrator of the institution; or

(3) Knowingly and with unlawful intent take, send or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision any telecommunication device.

T.C.A. § 39-16-201(b) (2017). The indictment listed the elements of possession of contraband in a penal institution, including that the Defendant knowingly possessed the controlled substances while present in a state institution where prisoners are quartered[1] under custodial supervision without the express written consent of the chief administrator of the institution. The Defendant's objection to the indictment is to the fact that the indictment charged him with acting "knowingly and intentionally," while the statutory provision regarding possession merely required him to act knowingly.

This court has previously declined to hold that an indictment was invalid for listing the incorrect mens rea when the indictment gave sufficient notice of the offenses with which the defendant was charged. In *Montez Adams v. Warden*, the petitioner asserted that the indictment was invalid because it included outdated language defining felony murder as the "reckless killing of another" committed during the underlying felony, whereas the new law required no culpable mental state save the intent to commit the underlying felony. No. M2016-01073-CCA-R3-HC, 2017 WL 564897, at *2 (Tenn.

---

[1] While the indictment omits the conjunction "or," the Defendant does not raise this omission as error, and the statutory provisions regarding introducing or possession contraband are identical in this respect.

- 6 -

Crim. App. Feb. 13, 2017). Despite the inclusion of the incorrect and raised mens rea, this court concluded that the indictment cited the correct statute, achieving the "'overriding purpose of notice to the accused … sufficient to satisfy both constitutional and statutory requirements.'" *Id.* (quoting *Hammonds*, 30 S.W.3d at 300). In *State v. Tyrone Sain*, the indictment incorrectly lowered the mens rea requirement, listing that the defendant acted knowingly when statute required intent. No. 02C01-9710-CC-00379, 1998 WL 999905, at *2 (Tenn. Crim. App. Dec. 24, 1998). A majority of this court concluded that the indictment referenced the statute and the "culpable mental state was easily ascertained by reference to this statute." *Id.* at *4. *State v. Mario D. Frederick*, relied on *Tyrone Sain* to determine that an indictment was valid when it charged knowing conduct but the statute required intentional conduct, concluding that the indictment referenced the statute and the mens rea was readily ascertainable from the statute. No. M2016-00737-CCA-R3-CD, 2017 WL 2117026, at *8 (Tenn. Crim. App. May 15, 2017). Likewise, in *State v. Roger F. Johnson*, the indictment stated that the defendant "should have reasonably expected" he would be viewed by another in his act of indecent exposure when the statute required the defendant to "reasonably expect[]" to do so. No. M2018-01216-CCA-R3-CD, 2019 WL 3074071, at *4, *5 n.3 (Tenn. Crim. App. July 15, 2019) (noting that the statute required subjective rather than objective mens rea). This court concluded that "the indictment, which includes the correct statute for the charged offense and ample information regarding the elements of this offense, provided sufficient notice to the Defendant of the charged crime." *Id.* at *5; *see Hart v. State*, 21 S.W.3d 901, 904-05 (Tenn. 2000) (concluding that the mental state could be inferred from a description of the conduct of aggravated rape even though the specific statute was not cited, and also concluding that language tracking the previous statue's "carnal knowledge" was sufficient to notify the defendant that he was charged with "sexual penetration").

We conclude that, based on the cases cited above, the indictment in this case was sufficient to provide notice of the charges, furnish a basis for the entry of judgment, and protect the Defendant against double jeopardy. The Defendant asserts that the citation to the general statutory provision prohibiting both possession and introduction of contraband was not sufficient to meet constitutional requirements because although the elements of possession were listed, the mens rea reflected the offense of introduction of contraband into a penal institution. Both subsections of the statute require that the contraband violation take place in a state institution where prisoners are quartered or under custodial supervision. The indictment cited to the section of the statute generally prohibiting contraband in a penal institution, but it tracked the specific language of the subsection of the statute prohibiting the possession of contraband in a penal institution, including the elements charging the Defendant with possession of contraband and charging that the possession occurred without the express written consent of the chief administrator of the institution. The indictment did not refer to taking, sending, or otherwise causing contraband to be taken into the institution, and the circumstances of the

offenses were that controlled substances were discovered in the Defendant's possession on his way out of the institution. The statute clearly sets out the mens rea for possession as "[k]nowingly."[2] Because the elements of the offense of possession of contraband — and not the elements of introduction of contraband — were listed in the indictment, the indictment did not conflate the offenses or mislead the Defendant regarding the basis of the charges. The indictment sufficiently identified the offenses with which the Defendant was charged even though the heightened mens rea of "intentionally" was also erroneously included in the indictment. We conclude that the indictment sufficed to fulfill the "overriding purpose of notice to the accused." *Hammonds*, 30 S.W.3d at 300. Accordingly, the indictment was not invalid, and the Defendant is not entitled to relief on this issue.

## II. Errors in Jury Instructions and Verdict Form

The Defendant also asserts that the erroneous references to the offense as "introduction of contraband into a penal institution" in the jury instructions and verdict form constituted a constructive amendment to the indictment and a fatal variance. He argues that the because the indictment included the mens rea of "intentionally," the jury should have been charged to find intent. The State contends that the instructions did not result in a fatal variance, that any claim regarding the verdict form is waived and can only be reviewed for plain error, and that the Defendant also waived any claim regarding instructing the jury on intent. We agree that the Defendant is not entitled to relief.

The statute in effect at the time of the offenses outlined three possible violations of the prohibition against contraband in a penal institution, which can be summarized as introducing contraband into a penal institution, possessing contraband in a penal institution, and introducing a telecommunication device into a penal institution. *See State v. Richard Burton*, No. W2007-02364-CCA-R3-CD, 2008 WL 2699655, at *2 (Tenn. Crim. App. July 9, 2008) (concluding that reversal was required when the indictment charged the elements of introducing contraband into a penal institution but the jury was instructed on the separate offense of possession of contraband in a penal institution).

The jury was charged:

---

[2] Although the indictment included the word "intentionally," a defendant who acts intentionally also satisfies the requirement of acting knowingly. *Cf. Tyrone Sain*, 1998 WL 999905, at *5 (Peay, J., dissenting) (arguing that the majority was in error in holding valid the indictment charging a lower mens rea than required because "it cannot logically be inferred from the language of the indictment (which alleges the defendant acted 'knowingly') that the defendant *necessarily* acted 'intentionally'").

- 8 -

COUNTS ONE and TWO
INTRODUCING CONTRABAND INTO A PENAL NSTITUTION

Any person who commits the offense of introducing contraband into a penal institution is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant possessed a controlled substance while present in any penal institution where prisoners are quartered or under custodial supervision; to wit, AS TO COUNT ONE, SUBOXONE and AS TO COUNT TWO, METHAMPHETAMINE;

and

(2) that the defendant did so without the express written consent of the chief administrator of the institution;

and

(3) that the defendant acted knowingly.


The verdict form for Count 1 read:

We the Jury, find the defendant, DEMON L. ADKINS.

| COUNT ONE: (CHOOSE ONE) | INTRODUCING CONTRABAND INTO A PENAL INSTITUTION |
|---|---|
| _____ | GUILTY OF INTRODUCING CONTRABAND INTO A PENAL |
| OR | INSTITUTION. |
| _____ | NOT GUILTY. |

The verdict form was identical for count two except for the numbering.

After trial, the Defendant moved to vacate the judgments and dismiss the indictment based on the indictment and verdict forms, asserting that the verdict forms demonstrated he was convicted of an offense with which he was not charged and which was not supported by the proof at trial. The trial court found that the overall title of the statute was "Introduction or Possession of Weapons, Explosives, Intoxicants, or Drugs into a Penal Institution Where Prisoners are Quartered" and noted that the pattern jury instructions identify the offense only as "introducing contraband into a penal institution." 7 Tenn. Prac. Pattern Jury Instr.—Crim. 23.01. The trial court found that the offenses were labeled as "introducing contraband into a penal institution," but that the jury instructions and indictment correctly referenced a single statutory subsection related to possession of contraband, and it denied relief.

## A. Constructive Amendment of the Indictment Through the Jury Instructions

The Defendant asserts that the references in the jury instructions to "introducing contraband into a penal institution" constitute a constructive amendment to the indictment which requires reversal. The State responds that the jury convicted the Defendant of the offense with which he was charged and that the jury was properly instructed regarding the elements. We conclude that because the jury's factual findings consisted of finding the elements of the offenses as provided by statute, any mislabeling of the offenses in this case does not constitute a constructive amendment to the indictment or invalidate the convictions.

We begin by observing that a defendant has a right to a correct and complete charge of the applicable law. *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000). The right to a correct and complete charge is constitutional, and each issue of fact raised by the evidence should be submitted to the jury with proper instructions. *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011). A jury charge should contain no statement which is inaccurate, inapplicable, or which might tend to confuse the jury. *State v. Hatcher*, 310 S.W.3d 788, 812 (Tenn. 2010). Read as a whole, the instructions and verdict form should not be inconsistent or contradictory. *State v. Welcome*, 280 S.W.3d 215, 220 (Tenn. Crim. App. 2007). The jury is presumed to follow the instructions of the trial court. *State v. Blackmon*, 701 S.W.2d 228, 233 (Tenn. Crim. App. 1985).

The Defendant contends that by identifying the offense as "introducing" contraband into a penal institution, the jury instructions created a constructive amendment to the indictment. A criminal defendant is entitled to notice of the crime charged and cannot be convicted of an offense not charged. *State v. Goodson*, 77 S.W.3d 240, 244 (Tenn. Crim. App. 2001). Rule 7(b) of the Tennessee Rules of Criminal Procedure prohibits an amendment to the indictment after jeopardy attaches, unless the defendant consents. Tenn. R. Crim. P. 7(b); *State v. Lindsey*, 208 S.W.3d 432, 439

(Tenn. Crim. App. 2006) (concluding it was error to allow the trial court to delete the phrase "and, or deliver" from a duplicitous indictment but concluding the error was harmless beyond a reasonable doubt). "'[A]fter an indictment has been returned[,] its charges may not be broadened through amendment except by the grand jury itself.'" *Lindsey*, 208 S.W.3d at 440 (quoting *Stirone v. United States*, 361 U.S. 212, 216 (1960)). "Put simply, not only must the government prove the crime it charges, it must charge the crime it proves." *Goodson*, 77 S.W.3d at 244. When a jury convicts the defendant based on evidence that modifies an essential element of the charged offense, the indictment is constructively amendment, and the error requires automatic reversal. *Id.* (citing *United States v. Adams*, 778 F.2d 1117, 1123 (5th Cir. 1985)). "A material variance occurs only if the prosecutor has attempted to rely at the trial upon theories and evidence that were not fairly embraced in the allegations made in the indictment." *State v. Mayes*, 854 S.W.2d 638, 640 (Tenn. 1993); *see State v. Shropshire*, 45 S.W.3d 64, 71 (Tenn. Crim. App. 2000). When the indictment alleges a specific mode of liability, the State must proceed under that mode of liability and cannot convict the defendant under a different mode of liability. *State v. Edward Rudolph Wyse, Jr.*, No. E2019-01454-CCA-R3-CD, 2020 WL 6141011, at *11 (Tenn. Crim. App. Oct. 20, 2020) (citing *Goodson*, 77 S.W.3d at 244), *no perm. app. filed*.

However, "before a variance will be held to be fatal it must be deemed to be material and prejudicial." *State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984). A variance is not material "where the allegations and proof substantially correspond, the variance is not of a character which could have misled the defendant at trial and is not such as to deprive the accused of his right to be protected against another prosecution for the same offense." *Id.*; *see Mayes*, 854 S.W.2d at 640. Accordingly, a variance between the proof and the charges in the indictment which does not effectively modify an essential element is subject to harmless error analysis. *Goodson*, 77 S.W.3d at 244 (citing *Adams*, 778 F.2d at 1123). The Tennessee Supreme Court has further elucidated the materiality in the following way:

> Unless substantial rights of the defendant are affected by a variance, he has suffered no harm, and a variance does not prejudice the defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, and (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense; all other variances must be considered to be harmless error.

*Moss*, 662 S.W.2d at 592.

- 11 -

Accordingly, when the proof does not correspond to the offense charged in the indictment, a constructive amendment of the indictment has occurred, and the defendant is entitled to relief. *See*, *e.g.*, *Goodson*, 77 S.W.3d at 245 (reversal was required when the indictment charged driving on a revoked license and the proof showed driving on a suspended license); *Edward Rudolph Wyse, Jr.*, 2020 WL 6141011, at *11 (a fatal variance existed where the defendant was charged with rape accomplished by force or coercion but the jury was instructed that it could convict the defendant based on rape accomplished without the victim's consent); *State v. Warren Smith*, No. W2019-01882-CCA-R3-CD, 2020 WL 4346798, at *7 (Tenn. Crim. App. July 28, 2020) (sua sponte remanding for a new trial when the jury was instructed on multiple theories of rape but only one theory was charged in the indictment), *no perm. app. filed*; *State v. Eric Lebron Hale*, No. M2011-02138-CCA-R3-CD, 2012 WL 3776673, at *10-11 (Tenn. Crim. App. Aug. 31, 2012) (reversal was required when the indictment charged robbery by violence but the jury was instructed that the crime could be established by proving either violence or putting the person in fear); *State v. Roger W. Christy*, No. M2011-00852-CCA-R3-CD, 2012 WL 804064, at *5-6 (Tenn. Crim. App. Mar. 12, 2012) (there was a constructive amendment when State alleged that the sexual battery by an authority figure was accomplished through the use of parental or custodial authority but the conviction was based on the use of a position of trust).

However, when the discrepancy between the indictment and the proof at trial does not affect the defendant's substantial rights by modifying an essential element of the offense charged, the error is analyzed for harmlessness. *See*, *e.g.*, *Mayes*, 854 S.W.2d at 641 (a variance was not material when the indictment specified one purchaser of narcotics but the proof established a different purchaser); *Moss*, 662 S.W.2d at 592-93 (an error in the indictment regarding the ownership of stolen money sufficiently gave the defendant notice and did not mislead him); *State v. Cory Lynn White*, No. E2017-00885-CCA-R3-CD, 2018 WL 1433513, at *5 (Tenn. Crim. App. Mar. 22, 2018) (a discrepancy between the false statement made to law enforcement as it was listed in the indictment and the actual statement shown by the proof was not material); *State v. March*, 494 S.W.3d 52, 74-75 (Tenn. Crim. App. 2010) (there was no fatal variance when the indictment alleged that the defendant conspired to have one person kill the victims but the proof showed he conspired to have a different person kill the victims, because the identity of the killer was not an element of the offense); *State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993) (refusing to find error because the record was incomplete and because the variance was not material or prejudicial when the discrepancy was regarding whether the aggravated assault occurred with a shotgun, as stated in the indictment, or with a handgun).

Here, the indictment listed the elements of the offense of possession of contraband in a penal institution. As we have determined above, the inclusion of a heightened mens

rea was surplusage that did not implicate the elements that needed to be proven at trial. *See State v. March*, 293 S.W.3d 576, 589 (Tenn. Crim. App. 2008) (holding that a surplus term in the indictment "'cannot enlarge the essential elements of the offense'" (quoting *State v. Witherspoon*, 769 S.W.2d 880, 884 (Tenn. Crim. App. 1988)). The elements of the offense listed in the indictment were the same elements that were charged to the jury. Accordingly, there was no variance at all between the elements charged in the indictment and the actual elements of the offense as found by the jury at trial.

The Defendant cites to *Richard Burton*, 2008 WL 2699655, at \*2, to support his argument that he was charged with possession of contraband but convicted of introduction of contraband, but we conclude the case is inapposite. In *Richard Burton*, the conviction was reversed because the indictment charged the elements of introducing contraband into a penal institution but the jury was instructed regarding the elements of possession of contraband in a penal institution. *Id.* at \*3-4. In the case at bar, on the other hand, the indictment and the jury instructions both required the jury to find the elements of possession of contraband in a penal institution.

The Defendant points to the fact that the jury was told that the name of the offense was "introduction of contraband" to a penal institution, rather than "possession of contraband" in a penal institution. We conclude that because the naming of the offense was neither material nor prejudicial, the Defendant is not entitled to reversal of his convictions. Here, the allegations and proof substantially corresponded, and the Defendant was neither misled at trial nor deprived of his right to be protected against another prosecution for the same offense. *See Moss*, 662 S.W.2d at 592. The statute prohibits contraband in a penal institution, and the labeling of the offense as introduction rather than possession did not constitute an essential element of the offense which the jury was required to find. As the trial court found, the pattern jury instructions refer to the violation of the prohibition of contraband in a penal institution as "introduction" whether such a violation is accomplished by introducing the contraband or by possessing the contraband. *See* 7 Tenn. Prac. Pattern Jury Instr.—Crim. 23.01. The jury made factual findings regarding each of the proper elements of possession of contraband in a penal institution, and it was not asked to make a factual finding regarding the labeling of the offense.

In *State v. Ackerman*, the indictment, judgment, election, and minute entry regarding the offense identified the offense as "sexual exploitation of a minor," which constituted a separate crime from the offense prohibited by the statute referenced by the indictment, "soliciting sexual exploitation of a minor." 397 S.W.3d 617, 624 n.1 (Tenn. Crim. App. 2012) (citing T.C.A. § 39-13-529 (2006); T.C.A. § 39-17-1003(a)), *overruled on other grounds by State v. Sanders*, 452 S.W.3d 300 (Tenn. 2014). This court concluded that "[t]he mislabeling of the offenses … does not create any error in the

convictions." *Id.* Likewise, in *State v. Mario D. Frederick*, this court noted in a footnote that the indictment, verdict forms, and pattern instructions all referred to the crime as "solicitation of sexual exploitation of a minor" while the statute referred to the crime as "solicitation of minor to observe sexual conduct." 2017 WL 2117026, at *1 n.2. This court concluded that a "mislabeling of the offenses in this case does not create any error in the convictions." *Id.*; *see State v. Osborne*, 251 S.W.3d 1, 15-16 (Tenn. Crim. App. 2007) (concluding that "although the numbers assigned to the offenses listed as separate counts in the amended bill of particulars and the State's election of offenses are sometimes different, the charged offenses as reflected in the two documents substantially correspond" and concluding that the variance was not material); *see also State v. Keith Dewayne Huxoll*, No. E2008-02601-CCA-R3-CD, 2010 WL 271287, at *5 (Tenn. Crim. App. Jan. 25, 2010) (concluding that erroneously labeling Class D felony evading arrest as "evading arrest while operating a motor vehicle" did not amount to plain error because even though the lesser included offense of Class E felony evading arrest also required the use of a motor vehicle, a supplemental jury charge clarified the jury's finding that the defendant committed the Class D felony).

We conclude that the error here was in the nature of a clerical error that was neither material nor prejudicial. The jury found the elements of the offense as required by statute and as charged in the indictment. The jury was not asked to make any finding with respect to the labeling of the offenses. The judgment forms list the offenses as "Contraband in Penal Inst.," correctly referring to the general offense prohibiting contraband in a penal institution. Accordingly, we conclude that there was not a fatal variance or constructive amendment to the indictment, and the Defendant is not entitled to relief.

### B. Constructive Amendment of the Indictment Through the Verdict Form

The Defendant also asserts that the naming of the offenses in the verdict form as "Introducing Contraband Into A Penal Institution" amounts to a constructive amendment of the indictment entitling him to relief. The State asserts that this claim is waived because the Defendant did not challenge the verdict forms at the time of trial. We agree that the claim is waived and that the Defendant is not entitled to relief.

In general, the Defendant must lodge a contemporaneous objection to an error in the verdict form. *State v. Davidson*, 121 S.W.3d 600, 618 n.11 (Tenn. 2003) (noting that failure to object constituted waiver but electing to address the issue); *State v. McKinney*, 74 S.W.3d 291, 303 n.5 (Tenn. 2002) (holding failure to object or raise the issue in a motion for a new trial waived the issue, but addressing the merits). When the defendant fails to object, only plain error may be noticed. *State v. Joseph H. Adkins*, No. E2012-02415-CCA-R3-CD, 2014 WL 1516331, at *13-14 (Tenn. Crim. App. Apr. 17, 2014)

(concluding that the defendant's failure to object to the trial court's decision to correct a typographical error in the verdict form regarding the underlying felony in a felony murder conviction resulted in waiver and that no clear and unequivocal rule of law was breached).

The Defendant did not lodge a contemporaneous objection or request plain error analysis, and the issue is waived. In any event, while a verdict form which indicates that the jury may have rendered its verdict based on an erroneous application of law may constitute reversible error, *see State v. Carter*, 988 S.W.2d 145, 153 n.4 (Tenn. 1999), the verdict may be valid if "it is clear that the trial court … properly instructed the jury and that the jury's verdict was based on the applicable law," *Davidson*, 121 S.W.3d at 620. In this case, the record establishes that the jury was properly instructed and that its verdict was based on applicable law. *See Davidson*, 121 S.W.3d at 620. The instructions correctly required the jury to find the elements of the offense. The judgments correctly reflect convictions for the general offense of "Contraband in a Penal Inst." Any error with the labeling of the offense was clerical in nature. *See Mario D. Frederick*, 2017 WL 2117026, at *1 n.2 (concluding that although the verdict forms and other documents mislabeled the offense, the mislabeling did not create any error in the convictions); *State v. Roger Weems Harper*, No. M2010-01626-CCA-R3-CD, 2012 WL 3731736, at *2-3 (Tenn. Crim. App. Aug. 29, 2012) (when the jury was only instructed on the elements of Class D felony evading arrest, a lack of specificity in the verdict form in labeling the offense did not require a reduction to Class E felony evading arrest); *State v. Bill Myers*, No. 03C01-9304-CR-00109, 1993 WL 444596, at *4 (Tenn. Crim. App. Nov. 3, 1993) (because the jury instructions were correct, a clerical error in leaving off the signature and date blanks next to the "not guilty" option did not warrant reversal). The Defendant is not entitled to relief.

## C. Instruction Regarding Intent

The Defendant asserts that because the indictment included the word "intentionally," it was error to instruct the jury that it could convict him on "mere knowing possession." The State responds that this issue is waived for failure to object or to include the issue in his motion for a new trial and that he is not entitled to plain error relief. We conclude that the Defendant is not entitled to relief.

Under Tennessee Rule of Criminal Procedure 30(b), a party's failure to object to a jury instruction "does not prejudice the right of a party to assign the basis of the objection as error in a motion for a new trial." However, the Defendant waived the issue by failing to raise it in his post-trial motions. *See* Tenn. R. App. P. 3(e) (stating that when the motion for a new trial omits issues regarding "jury instructions granted or refused … or other action committed or occurring during the trial of the case," the issue will be treated

as waived). In any event, the Defendant has cited to no authority that the jury should have been required to find he acted intentionally when the statute did not require such a finding and when the indictment provided adequate notice to apprise the Defendant that he was being charged with knowing possession. To the contrary, surplusage in the indictment "'cannot enlarge the essential elements of the offense.'" *March*, 293 S.W.3d at 589 (quoting *Witherspoon*, 769 S.W.2d at 884). Accordingly, the Defendant is not entitled to relief on this issue.

### III. Sentencing

For the first time on appeal, the Defendant asserts that the savings statute in Tennessee Code Annotated section 39-11-112 applies to his sentence and that he is entitled to a new sentencing hearing and a lesser punishment. The State argues that this argument is waived and that the savings statute does not apply. The Defendant responds that the savings statute applies, that the new legislation has rendered the sentence imposed illegal, and that accordingly the issue is not subject to waiver, and he alternatively requests plain error review. We review de novo whether or not the Defendant is entitled to the benefit of the savings statute. *State v. Menke*, 590 S.W.3d 455, 459 (Tenn. 2019). We conclude that the Defendant is entitled to the lesser punishment set out by the amendment to the statute defining his criminal offenses, and we remand for resentencing.

The State argues that the Defendant has waived his entitlement to benefit from the savings statute by not raising the issue in the trial court. The Defendant responds that his sentence is reviewable as illegal or that he is entitled to plain error relief. When conducting appellate review of a case, this court can address the imposition of an illegal sentence, even if the issue is not raised by the parties. Tenn. R. App. P. 13(b) (noting that the appellate court may consider issues sua sponte "(1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process"); *State v. Brown*, 479 S.W.3d 200, 210 (Tenn. 2015) (citing *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978), for the proposition that an illegal sentence can be corrected at any time); *State v. Terrance E. Kindall*, No. M2014-01680-CCA-R3-CD, 2015 WL 4087200, at *2-3 (Tenn. Crim. App. July 7, 2015) (sua sponte raising the issue of an illegal sentence and vacating the sentence); *State v. Dwaylan Dupree House*, No. W2012-01272-CCA-R3-CD, 2013 WL 12185203, at *7 (Tenn. Crim. App. June 21, 2013) (reversing an illegal sentence sua sponte and remanding); *see State v. Petr Pompa*, No. M2016-00193-CCA-R3-CD, 2017 WL 1014529, at *19 (Tenn. Crim. App. Mar. 15, 2017) (noting sua sponte that the trial court's alteration of the judgment forms after the judgment had become final was proper because it served to correct an illegal sentence). An illegal sentence is one that directly contravenes an express statutory provision or is

not authorized by the applicable statutory scheme. *State v. Wooden*, 478 S.W.3d 585, 594 (Tenn. 2015).

The Defendant argues that the sentence was illegal and also cites to cases in which he believes this court has reviewed the trial court's failure to apply the savings statute to impose a lesser penalty under plain error. *See State v. Steven Michael Odom*, No. W2018-00634-CCA-R3-CD, 2019 WL 1126068, at *8-9 (Tenn. Crim. App. Mar. 12, 2019) (not conducting a plain error analysis but reversing the sentence sua sponte for failure to apply the savings statute); *State v. Brandon Ramel Cole-Pugh*, No. W2017-02402-CCA-R3-CD, 2019 WL 1239868, at *3 (Tenn. Crim. App. Mar. 18, 2019) (not examining the factors for plain error but characterizing sua sponte relief under the savings statute as "a matter of plain error"). The State opposes plain error relief on the grounds that the savings statute does not apply and on the grounds that Tennessee Rule of Criminal Procedure 36.1 provides an alternative route to challenge an illegal sentence. The State does not cite to any authority to support the novel suggestion that our direct review is foreclosed simply because the rules provide for an additional avenue of relief other than direct review. We conclude that the Defendant's challenge is one alleging that his sentence is illegal and imposed in direct contravention of the savings statute, and it is accordingly not waived, but even if we were to apply plain error review, the effect would be the same because we determine that the savings statute does apply to the Defendant's sentence.

Generally, a sentence is imposed "pursuant to the statute in effect at the time of the offense." *State v. Smith*, 893 S.W.2d 908, 919 (Tenn. 1994). However, under Tennessee Code Annotated section 39-11-112, a subsequent statute will apply to sentencing if it provides for a lesser penalty:

> When a penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, the offense, as defined by the statute or act being repealed or amended, committed while the statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense. Except as provided under § 40-35-117, in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act.

T.C.A. § 39-11-112. Accordingly, when an amendment provides for a "lesser penalty" than the previous version, "the condition provided in the Criminal Savings Statute is satisfied and … the amended version of the … statute is applicable even where … the offense occurred before the amendment's effective date." *Menke*, 590 S.W.3d at 470.

- 17 -

The savings statute does not apply to a sentence imposed prior to the amendment's effective date. *State v. Keese*, 591 S.W.3d 75, 84 (Tenn. 2019).

Here, the Defendant was convicted of possessing contraband in a penal institution, an offense committed in September 2017. The offense required the State to show that the Defendant "[k]nowingly possess[ed]" any controlled substances or controlled substance analogues found in title 39, chapter 17, part 4 "while present in any penal institution where prisoners are quartered or under custodial supervision without the express written consent of the chief administrator of the institution." T.C.A. § 39-16-201(b)(2) (2017). This offense was a Class C felony. T.C.A. § 39-16-201(c). The Legislature subsequently passed a bill deleting subsections (b) and (c) of the section and substituting language making it an offense to "[k]nowingly *and with unlawful intent* possess any of the following materials while present in any penal institution where prisoners are quartered or under custodial supervision without the express written consent of the chief administrator of the institution." 2019 Tenn. Pub. Acts, c. 486, § 7, eff. July 1, 2019 (emphasis added); *see* T.C.A. § 39-16-201(b)(2) (2019). The materials prohibited include any controlled substance or controlled substance analogue found in title 39, chapter 17, part 4. *Id.* The offense of either possessing or introducing contraband in the form of controlled substances into a penal institution is now a Class D felony, whereas the offense of possessing or introducing contraband in the form of a weapon remains a Class C felony. T.C.A. § 39-16-201(c)(1), (2) (2019). The amendment to the statute was approved on May 24, 2019, and took effect July 1, 2019, prior to the Defendant's sentencing hearing.

When an offense is amended, the savings statute requires the offense to be prosecuted under the statute in effect at the time of the offense but "in the event the subsequent act provides for a lesser penalty," the defendant is entitled to the benefit of the penalty. T.C.A. § 39-11-112. Here, the Legislature amended both the mens rea of the offense and the penalty. The Legislature altered the offense by making possession of contraband prohibited when a defendant acts "[k]nowingly and with unlawful intent" as opposed to simply "[k]nowingly." The Legislature likewise altered the penalty for possession of contraband in the form of controlled substances, lowering the offense from a Class C to a Class D felony. By the plain terms of the savings statute, the altered mens rea element would not apply to the Defendant's offenses, but the lesser penalty would apply to his sentence. The State cites to no authority for the proposition that we may only apply one prong of the savings statute. While the Legislature made a minor change to the mens rea of the crime, the offense is substantially unaltered, and we reject the State's contention that the offense is not in essence the same. *Compare State v. Young*, 904 S.W.2d 603, 606 (Tenn. Crim. App. 1995) (the defendant could be prosecuted for both theft and false pretenses when the criminal acts occurred both prior to and after the amendment of statute and when the offenses, which were codified in different chapters of

title 39, required different elements). We note that the legislative history of the bill confirms that the Legislature intended to lower the punishment for possession of controlled substances in penal institutes. *See*, *e.g.*, Statement of Senator John Stevens, Senate Judiciary Committee, February 26, 2019 (noting that the act "reduces the punishment for drug possession in prison from a Class C felony to a Class D felony"). Accordingly, the Defendant was entitled to benefit from the savings statute, and the trial court was required to impose a lesser punishment in accordance with the amendment. *See* T.C.A. § 39-11-112 (mandating that "any punishment imposed *shall be* in accordance with the subsequent act" (emphasis added)).

The savings statute required the trial court to apply the lesser penalty and to enter judgments showing that the Defendant's convictions were Class D felonies. Because the trial court applied the greater punishment and sentenced the Defendant for having committed Class C felonies, the sentences are reversed, and the case is remanded for resentencing.

## CONCLUSION

Based on the analysis above, we affirm the Defendant's convictions but reverse his sentences and remand for resentencing in accordance with this opinion.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE

- 19 -